## Commonwealth of Pennsylvania ex rel. W. U. Hensel, Attorney General, Appellant, *v.* The Provident Bicycle Association.

*Insurance—Protective insurance—Protective association—Bicycles.*

A corporation was chartered under the act of April 29, 1874, by a court of common pleas " for the purpose of the accumulation of a fund by assessments for the protection of its members from loss by reason of injury to or the losing of bicycles." Each member was required to pay $6.00 per year, by virtue of which payments the corporation agreed to (1) clean bicycle twice during year; (2) repair tire when punctured by accident; (3) repair bicycle when damaged by accident; (4) replace bicycle when destroyed by accident; (5) replace bicycle when stolen, if not recovered in eight weeks, and provide a bicycle during that time. There was no agreement to pay money for any loss. *Held*, that the corporation was not an insurance company within the meaning of the act of May 1, 1876, P. L. 53, and that its charter should not be forfeited by quo warranto proceedings.

Argued June 2, 1896.   Appeal, No. 18, May T., 1896, by plaintiff, from judgment of C. P. Dauphin Co., March T., 1895, No. 4, in quo warranto proceedings.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.   WILLIAMS, J., dissents.

Quo warranto to forfeit charter.

The facts appear by the opinion of McPHERSON, J., which was as follows:

This a proceeding by quo warranto in which it is averred that the defendant claims to have, exercise, use, and enjoy the right to transact the business of insurance, but does not have a charter as required by the act of May 1, 1876, P. L. 53.   The facts are agreed upon, and are substantially as follows:

The defendant is a corporation chartered in November, 1894, under the general corporation act of 1874 by a judge of the common pleas of Philadelphia county "For the purpose of the accumulation of a fund by assessments for the protection of its members from loss by reason of injury to, or the losing of bicycles."   Every member of the association pays a fixed annual due of $2.00, and a further sum of $1.00 on the 1st days of January, April, July and October, making a total annual payment of $6.00.   By virtue of these payments the member becomes and remains entitled to all the benefits accruing under a card of membership issued to him by the association, which contains the following contract:

"The Provident Bicycle Association agrees to, 1. Clean your bicycle twice during the year.   2. Repair tire when punctured by accident.   3. Repair bicycle when damaged by accident. 4. Replace bicycle when destroyed by accident.   5. Replace bicycle when stolen, if not recovered in eight weeks, and provide a bicycle during that time."

It is also provided by the card of membership that "Assessments are due January 1st, April 1st, July 1st, and October 1st. Membership is forfeited if assessments are not paid on the above dates before 12 o'clock, noon."   The association has no lodges, secret ritual, signs or symbols, and does not pay its members any sick disability or death benefits.

Upon these facts the question first arises: Is the defendant

carrying on a kind of business which is provided for and regulated by the act of 1876? If so, its business is being conducted unlawfully, because it is a corporation of the first class chartered as a protective association under section two of clause nine of the corporation act of 1874, and not under the insurance act of 1876, under which alone insurance companies strictly so called can now be incorporated : Com. v. Equitable Association, 137 Pa. 412, and note. The defendant's franchise to be a corporation is not attacked ; the dispute simply concerns the character of its business. If it is making contracts of accident insurance, as the commonwealth contends, it needs the authority of a charter under the insurance statutes ; and as it has no such authority it must cease to exercise this pretended power. But if its contracts do not fall within the scope of these statutes, but are such agreements as may be made under the corporation act of 1874, the present proceeding must fall.

The contract contained in the card of membership is peculiar. In some respects it is like, and in other respects unlike, a contract of accident insurance. It is not insurance to agree to clean the bicycle of each member twice during the year ; nor is it insurance to agree to provide a bicycle for his use during eight weeks if his own is stolen, unless the stolen property is sooner recovered or replaced. Upon the other hand, the agreement to repair in case of accident, and the agreement to replace when a total loss occurs by accident or by theft, may readily fall within the general language of many accepted definitions of insurance. For example : In section one, May defines the transaction as " A contract whereby for a consideration one undertakes to compensate another if he shall suffer loss ; " and Phillips, in section one, defines it to be " A contract whereby for a stipulated consideration one party undertakes to indemnify the other against certain risks." The American and English Encyclopædia of Law, vol. 11, page 280, expresses the same thought in slightly different language : " A contract whereby one party agrees to indemnify another in case he shall suffer loss in respect of a specified subject by a specified peril." Our own Supreme Court, in distinguishing an insurance company from a beneficial association, thus describes the former : " The general object or purpose of an insurance company is to afford indemnity or security against loss ; its engagement is not

founded in any philanthropic, benevolent or charitable principle; it is a purely business adventure, in which one for a stipulated consideration or premium per cent engages to make up wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to personal injury or to loss of life. To grant indemnity or security against loss for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance:" Com. v. Beneficial Association, 137 Pa. 419. These quotations, and others which might be added, do not specify the means by which indemnity is to be given; but obviously indemnity may conceivably be made either by a money payment, or in certain cases by repairing or replacing the object injured or destroyed. Accordingly many insurance policies offer the company an option to repair or replace, although the option is not often exercised.

There is, however, one prevailing feature of insurance policies as they exist in practice, which these abstract definitions do not express. It appears in the following quotation from Smith's Common Law, p. 299, defining insurance to be " A contract by which a person, in consideration of a gross sum or of a periodical payment, undertakes to pay a larger sum on the happening of a particular event." A similar idea is thus stated in Smith's Law of Contracts, star page 248: "Insurance . . . . is a contract by which, in consideration of a premium, one or more persons assure another person or persons in a certain amount against the happening of a particular event." This is the form in which policies are almost universally cast. The amount stated is usually intended as the limit of the insurer's risk, but it also makes prominent the fact that the primary undertaking is to pay money, and not to replace or repair the object injured or destroyed. Indeed in many cases replacing would be impracticable—even where the object destroyed was by no means unique—because there would be no agreement between the parties that the object offered was identical with the object lost or destroyed. As an instance, if a horse was insured against theft and was afterwards stolen, it may be affirmed with confidence that scarcely ever would the parties be able to agree upon a substitute for the lost animal. In this, and in every similar situation, the opportunities for friction and dispute concerning

the fulfillment of the insurer's obligation are so many that it is easy to understand why the option to replace is so seldom exercised.

While, therefore, as an abstract proposition, an insurance company might issue a policy agreeing to repair or replace, and specifying no sum whatever, either as a maximum or as a sum definitely agreed upon beforehand; it does not follow that every corporation which agrees to repair or replace, without fixing a limit in money to its obligation, is doing the business of insurance as it is ordinarily regarded and is carried on in practice. The insurance act of 1876 certainly does not regard that kind of agreement as necessarily a contract of insurance; for its provisions do not permit the incorporation of companies for this purpose. The class into which such a company would be expected to fall is the fourth class named in section one (now the third class under the act of 1895, P. L. 116), viz: " To make insurance . . . . against loss, damage or liability, arising from any unknown or contingent event whatever . . . ." Corporations of this class may be organized either upon the stock or mutual principle. If a mutual company is to be chartered— such as the present defendant—section four requires that " the subscribers to the articles of agreement shall open books to receive applications for insurance at convenient times and places, and keep the same open until applications for insurance have been obtained in sufficient number and amount to comply with the requirements of this act." Section seven further provides that " Whenever applications for insurance in the case of a mutual company mentioned in the . . . . fourth paragraph of the first section of this act have been obtained in sufficient number and amount," the officers of the company shall certify to the governor " the names and the residences of the persons applying for insurance in said company and the amount agreed to be taken by each," whereupon the governor shall incorporate them by directing letters patent to issue. And finally, in sections eleven and thirteen, it is provided that mutual companies organized for any of the purposes of the act " may accept risks and issue policies whenever applications be made for insurance to the amount of $200,000. . . . "

These provisions indicate clearly the kind of contracts which a company incorporated under this act is expected to make—

whether it be organized on the stock or mutual plan—and manifestly an association which does not specify any amount in its policy cannot successfully ask for a charter thereunder. Accordingly it must be held of necessity that the defendant is not obliged to have a charter which it cannot obtain.

There is one clause in section fifty-four of the act of 1876 which is capable of being construed so as to exclude associations like the defendant from the operation of the insurance statutes; and if that is its true construction, no further reply is needed to the question which we are now considering. The section is as follows: "That this act and the act to which this is a supplement (Insurance Act of 1873) shall not apply to the beneficial associations that provide aid for the family or heirs of a deceased member, whether issuing policies containing a guaranteed sum of insurance or not, *nor to associations issuing policies not containing a guaranteed sum of insurance.*" Evidently the clause italicised if read by itself is broad enough to embrace the defendant; but this manner of reading would fail to reach the truth. The history of insurance and of insurance legislation in this commonwealth—considering especially those companies which do business upon the assessment plan—taken in connection with the fair meaning of the section read as a whole, enables us to say with confidence that the clause in question refers only to the assessment associations which were then coming into prominence, and were practically insuring lives while they were professing to be mere beneficial associations. A few of these societies were promising to pay a definite sum at death, but much the larger number preferred a contract to pay no more than might be collected from the surviving members. It is well known that these assessment companies were anxious to escape the regulation of the insurance statutes and the supervision of the insurance commissioner, and that the clause in question had no other purpose than this. It does not apply to any other kind of company or to any other kind of business.

The remaining question is this, does the corporation act of 1874 authorize the defendant to make such contracts as are contained in the card of membership already quoted? The clause under which the defendant is chartered permits incorporation for "the maintenance of a society for beneficial or protective purposes to its members from funds collected therein;" and in

our opinion the defendant's business falls fairly within this description. It is not a beneficial association, Com. v. Association, 137 Pa. 419, but it is protective in its purpose and in the actual character of its business. Its agreement is an undertaking not to pay money but to perform certain services for its members. Without doubt these services benefit the members and protect them from loss or inconvenience ; and while it is freely admitted that in some respects the defendant's undertaking approaches closely the field which belongs properly to insurance—at least to insurance abstractly considered—nevertheless we think that the absence of an agreement to pay money establishes a difference between this undertaking and the contract of insurance as it is known in practice, which of itself perhaps would justify us in saying that the transaction as a whole falls fairly within the protective clause already quoted from the act of 1874.

Moreover this agreement differs in other respects from the usual policy of insurance. The defendant makes the same contract with each member ; it does not grade its risks ; it receives the same sum from each person, although it undertakes to perform services which may vary widely in value among the members served. One bicycle may require no repairs during the year, while another may need to be repaired every month; total destruction will be comparatively infrequent, and it may safely be assumed that losses by theft will be still more rare. Bicycles differ considerably in value ; but for the same sum the defendant will replace a wheel worth $100 and a wheel worth only half that sum. In brief, whatever may be the loss or injury which each member may sustain, he is entitled to have it made good in consideration of the same unvarying sum. The extent of his rights is tested only by the fact of membership.

We may say also that upon the facts before us, which do not show in what manner the defendant intends to carry out its contract, it is impossible to declare that its proposed method of operation is unlawful. It is quite clear that an association of bicycle owners, with many members, can protect themselves against loss or injury at a much cheaper rate than can an individual; it can get repairing done at better rates, and can buy at better rates for the purpose of replacing wheels that are stolen or destroyed by accident. Indeed, if the association chose to do so it could establish a repair shop of its own and in that way carry out a part of its contract without even being

supposed to violate any provision of law. The manner in which the defendant intends to fulfil its agreement to repair and to replace does not appear from the facts agreed upon by the parties, and we are not at liberty to presume in the absence of proof that any unlawful method is proposed. Clearly, if the association intends to maintain its own repair shop, or to purchase bicycles in wholesale quantities and at wholesale rates so as to be able to replace from its own stock those which may be destroyed or stolen, its business in these respects cannot be described as insurance in the ordinary use of that word. And even if it arranges that other persons shall do the work or furnish the wheels, the benefit which the members thus receive is essentially the same as if it performed these services itself.

We add in conclusion that this view of the defendant's business is not in conflict with the case of Solebury Mutual Protective Society, 4 C. P. Rep. 11. In that case Judge YERKES was considering whether he would incorporate a company for " The recovery of property that may be stolen from its members, and in the event of a failure to recover such property, to pay to the loser such part of the value thereof as the company may hereafter determine and set forth in its by-laws." This apparently contemplates a positive agreement to pay money; and as no by-laws and no form of contract were submitted, the court was naturally unwilling to take the risk which was so plainly visible in the large discretion committed to the company. As the opinion says, in a metaphor of some boldness : " The paragraph in the second article providing for compensation to the loser of such part of the value of the property as the company may hereafter determine and set forth in its by-laws is the Trojan horse by means of which a full fledged and unrestricted insurance company is to be introduced to fill out the skeleton which we are asked to set up as a society for beneficial and protective purposes to its members, not for profit." In the case before us, however, the charter has been already granted, and we know the kind of contract which the company is actually making. We regard it as a proper contract for a protective society to make ; if an attempt should be made to change it so as to enter the field of insurance, or if an effort should be made to carry it out by an unlawful method, the power of the court is ample to afford redress.

Without further elaboration, and conceding that the question is not free from difficulty, we hold that this society is not doing the business of insurance, and does not need a charter under the act of 1876. Its business can be carried on lawfully under the charter which it holds from the common pleas, and the commonwealth has not proved that any unlawful method has yet been adopted.

Judgment is accordingly directed to be entered for the defendant.

*Error assigned* was in entering judgment for defendant.

*Jno. P. Elkin*, deputy attorney general, with him *Henry C. McCormick*, attorney general, for appellant.—The defendant association is not a beneficial society such as can be incorporated under the authority of the act of 1874: Com. v. Equity. Beneficial Ass'n, 137 Pa. 412; Berry v. Knights Templar, 46 Fed. Rep. 439.

The business transacted by the defendant association is accident insurance: Pullen v. Glover, 12 East 124; Roebuck v. Hammerstown, Cowp. 737; 2 Blackstone, 458; Biddle on Ins. sec. 2, p. 2; Lucena v. Crawford, 2 B. & P. N. R. 301; Farmer v. State, 69 Texas, 561; Com. v. Wetherbee, 105 Mass. 149; State v. Farmers' Benevolent Ass'n, 18 Neb. 276.

*E. Spencer Miller*, for appellee.—We submit that even aside. from the express exemption declared in section 54 of the act of 1876, such a corporation as respondent should not be considered an insurance company within the terms of the act.

There is no inconsistency between this primary idea of insurance and the taking of precautions by the insurer, though the effect of such precautions may be to make the risk which is borne by the insurer less than it would have been if left to fall upon the ordinarily negligent insured. The relation of the parties is still this primary relation of insurance.

The Provident Bicycle Association is not open to exception. If it makes bicycles to replace those which are lost or stolen, or if it does its own repairing, the establishment so used is the property of the members. If it makes the saving for which it is organized, by securing club rates, the continuing contracts for such rates are the property of all the members in their corporate capacity.

OPINION BY MR. JUSTICE FELL, January 4, 1897:

The defendant is a corporation chartered under the second section of the act of 1874 as a protective association. The question raised by the quo warranto and the answer is whether the association is carrying on the business of insurance in violation of the act of 1876. The right challenged is that of the defendant to carry on the business in which it is engaged. A part of this business is clearly not insurance, and a part of it may come within the meaning of that term. This would however depend on the manner in which the affairs of the association are conducted. All of its business may be so transacted as to be of a kind that a protective association may properly carry on, and it does not appear that it has not been so transacted. The obligation of the association is to repair and replace, not to pay a fixed amount or an amount covering or proportionate to the loss sustained, and the right of the member is fixed by the fact of membership. The propriety of granting such a charter under the act of 1874 may well be doubted, as there is a probability of its improper use as a cover for a business regulated by the act of 1876, and this case is so near the border line that we have hesitated to affirm it because it might encourage attempts to establish insurance companies which would not be subject to the wholesome provisions of the insurance laws. These laws are founded on a wise public policy, and any attempt to evade them should be promptly met and defeated. We cannot however say that the learned judge of the common pleas erred in entering judgment in this case for the defendant, and we can add nothing to his very able and thorough discussion of the subject.

The judgment is affirmed.