PHYSICIANS' DEFENSE COMPANY v. THOMAS D. O'BRIEN.[1]

April 1, 1907.

Nos. 14,981—(159).

**Insurance—Defense of Malpractice Cases.**

A contract by which a corporation, in consideration of a stipulated amount, agrees to defend a physician against all suits for damages for malpractice at its own expense, not exceeding a fixed amount, but not to pay any judgment obtained against the physician, is a contract of insurance, and the corporation making such contract is engaged in the business of insurance.

**Same.**

The essential purpose of such a contract is not to render personal services, but to indemnify against loss and damage resulting from the defense of actions for malpractice.

Appeal by defendant, as insurance commissioner of the state of Minnesota, from a judgment of the district court for Ramsey county entered pursuant to the findings and order of Kelly, J. Reversed.

*Edward T. Young*, Attorney General, and *R. A. Stone*, Assistant Attorney General, for appellant.

*C. D. & R. D. O'Brien*, *Walter Olds*, *Charles M. Niezer*, *R. S. Taylor*, and *Fred B. Shoaff*, for respondent.

ELLIOTT, J.

This is an appeal from a judgment entered upon the findings of the district court that the Physicians' Defense Company is not engaged in the insurance business and that the contract which the company makes is not a contract of insurance.

The object of the company, as declared by its charter, is to

Aid and protect the medical profession in the practice of medicine and surgery by the defense of physicians and surgeons against civil prosecutions for malpractice. The proposed plan of doing business is as follows: The association will issue to physicians and surgeons, for stated and agreed compensation, contracts by which it will undertake and agree to defend the

[1] Reported in 111 N. W. 396.

holder of the contract at its own expense against any action brought against him for damages for alleged malpractice in relation to or connection with services performed or which should have been performed within the time covered by the contract. But the association shall not, in any defense contract issued by it, assume or agree to assume or pay any judgment for damages for malpractice rendered against the holder of such contract.

The case was submitted and determined by the trial court upon the following stipulated facts:

The Physicians' Defense Company is a corporation duly created and existing under the laws of the state of Indiana, with its principal place of business at Fort Wayne, Allen county, Indiana, and lawfully transacting its said business as a physicians' defense company throughout the United States, and it is now, and has been for some time past, transacting the business of defending physicians and surgeons in civil prosecutions for malpractice, under and pursuant to the terms of its contract, a copy of which is filed herewith, marked "Exhibit A," and made a part of this agreement. Said company has for some time in the past been transacting its business in the state of Minnesota under a license duly issued to it by the state department of the state of Minnesota, which certificate is under date of August 27, 1903, and has complied with the laws in such cases made and provided; but said company has not complied with any of the provisions of the statute of Minnesota relative to the transaction of business as an insurance company, nor has it been licensed as such in the state of Minnesota.

It is claimed by said Physicians' Defense Company that it is not an insurance company within the meaning of the statutes of the state of Minnesota, and that the transaction of its business or the issuing of its contract does not fall within the regulations or requirements of the statutes of Minnesota relating to insurance business, nor within the regulations, rules, or provisions of the insurance department of the said state of Minnesota. Recently, however, the right of said Physicians' Defense Company to transact its business in the state of Minnesota without compliance upon its part with the insurance laws of said state was challenged by the insurance department of said state,

and thereafter the question was submitted for an opinion thereon to the honorable the attorney general of said state, and thereafter, and on the 8th day of December, 1905, the said attorney general issued his opinion to the effect that the contract of the Physicians' Defense Company is a contract of insurance, and that such company should therefore, in his opinion, comply with the insurance laws of the state of Minnesota if it desires to carry on its business therein, which said opinion of said attorney general was then and there addressed to the above-named defendant, who was then and there, and now is, the duly appointed, qualified, and acting insurance commissioner of the state of Minnesota; that thereupon, and on the 16th day of December, 1905, the said defendant, as such insurance commissioner of said state, duly advised said plaintiff of the opinion of said attorney general, and notified it to transact no further business in the state of Minnesota until it had fully complied with the laws governing the admission of insurance companies in said state; and that such commissioner, unless restrained therefrom, or unless in the opinion of the court said company should be entitled to transact its business without compliance with such laws regulating insurance, threatens to and will prevent the said plaintiff company from further carrying on and transacting its business in the state of Minnesota, unless said company shall fully comply with the laws governing the admission of insurance companies in said state.

The business proposed to be carried on by said plaintiff company consists in soliciting physicians in regular practice to enter into the contract with it, as set out under Exhibit A, and whereupon, according to the terms of said contract, in case any such physician shall be sued for malpractice, said company undertakes to arrange his defense in the manner and form therein provided, and only to the extent and in the manner set forth in said contract hereto attached as Exhibit A.

The question to be presented here is whether such contract in law constitutes a contract of insurance, thereby subjecting said plaintiff company to the insurance laws of the state of Minnesota, or whether it does not. Inasmuch as the question is one involving important public and private rights, and the facts therein are as aforesaid, it has been agreed between said plaintiff company and said defendant, as such insurance commissioner, and the honorable attorney general of

the state of Minnesota, that the foregoing facts constitute the case, and may be submitted to this court for determination upon said state-. ment, to the end that an application for an injunction against said insurance commissioner may be avoided, and to the further end that said question may be speedily determined, and for such purposes the foregoing facts are hereby agreed upon as being the facts constituting and involved in the questions at issue between the parties, and upon which the judgment of this court is prayed.

The contract which the company has been making and which it pro-poses to make in this state is in the following form:

> In consideration of the written and printed application, which is hereby made a part of this contract, and the sum of fifteen dollars, receipt of which is hereby acknowledged, being the consideration for one year's defense, and the further payment of fifteen dollars annually in advance on the ——— day of ———, of each year during the life of this contract, the Physicians' Defense Company (hereinafter known as company) hereby agrees to defend the legally qualified physician, ———, of the city of ———, county of ———, state of ———, against all civil suits for damages for malpractice, based on professional services rendered by himself or his agent during the term of this contract, at its own expense, not exceeding five thousand dollars in defense of any one suit, nor exceeding in the aggregate ten thousand dollars in defense of suits based on services rendered by the holder hereof, within one year from the date of this contract, or within any one year for which this contract shall be renewed, all in the manner and upon the conditions herein below stated, to wit:
>
> Immediate notice by telegram must be given the company at the home office at Fort Wayne, Ind., of any suit brought or demand made; and the holder hereof shall immediately forward the summons or other process served, and the complaint or petition filed, together with a full and complete history of the case and services rendered.
>
> Upon receipt of notice from the holder hereof that a suit has been commenced against him for damages for civil mal-

practice, the company will employ a local attorney, in whose selection the holder hereof shall have a voice.

Such defense will be maintained until final judgment shall have been obtained in favor of the holder hereof, or until all remedies by appeal, writ of error, or other legal proceedings shall have been exhausted, or until the sum of five thousand dollars shall have been expended in said defense; provided, said company. shall not be under obligation to expend more than ten thousand dollars in the aggregate in the defense of suits based on services rendered by the holder hereof during the original one-year term or any renewed one-year term of this contract.

Said company does not obligate itself to pay or to assume or to secure the payment of any judgment rendered against the holder hereof, in any suit defended by it.

The company shall not compromise any suit or claim for malpractice against the holder hereof.

No suit or claim will be defended by this company, under this contract, in which the cause of action arose previous to the date of this contract.

This contract does not cover criminal prosecutions nor suits for assault, criminal abortion, fœticide, homicide, or other criminal act, or actions arising by way of counterclaim or recoupment.

This contract shall not lapse at the end of the time as stated above if the holder hereof shall pay the annual consideration in advance at the home office in Fort Wayne, Ind., or to an authorized agent of the company, in exchange for the company's receipt, signed by the president and secretary and countersigned by the agent, but shall continue in force for the term or terms for which such annual consideration shall be paid; provided, however, that the liability of the company under such extension shall not be cumulative.

No consideration or agreement contained in this contract, or application for same, can be waived or altered in any manner by any person other than the president or secretary, in writing indorsed hereon.

The contract is very carefully and skilfully framed for the purpose of conveying the idea that it is an agreement for the performance of services and not for the indemnification of the physician against loss; but, unless we admit that language was invented to enable us to conceal our thoughts, this is a contract of insurance. Calling it "prophylactic and preventive" suggests its connection with the medical profession, but does not change its essential character.

The books are full of definitions of insurance, and the contract has been variously described and characterized. Underlying all the definitions, except in life insurance, is the idea of indemnity. We are not required to go afield for a definition, as R. L. 1905, § 1596, states that

> Insurance within the meaning of this chapter is any agreement whereby one party for a consideration undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage.

The nature of the contract must be determined from its contents and not by its terminology. Comparing this contract with the statutory definition, we find that one party (the company) for a consideration (stated therein) undertakes to indemnify (that is, protect against, make good, by standing the expense of the litigation) another (the physician) to a specific amount (not to exceed $5,000, etc.) against loss or damage from a specific cause (an action for malpractice). In addition to paying the expenses of the litigation, the company agrees to employ counsel and defend suits; that is, in the language of the statute, to "do some act of value to the insured in case of such loss or damage." It does not require the citation of authorities to show that an agreement to save the assured harmless from a part of a loss is as much a contract of insurance as an agreement to indemnify against an entire loss.

A physician is subject to the ever-present peril of an action for malpractice. The defense of such an action, regardless of its merits, requires the expenditure of time and money. If the defense is successful, there is nevertheless a financial loss; if unsuccessful, the amount of the judgment is added to this initial loss. The judgment in favor of a defendant always leaves him a loser, because but a part of the

actual expenses of the litigation are taxable as costs against the plaintiff. If judgment in a malpractice case is rendered against the physician, it is so much in excess of what he has incurred in the defense of the suit. In every case the defendant suffers a financial loss.

Under this contract the company does not agree to pay the judgment, but it does agree to defend the action at its own expense, and thus in substance indemnify the physician against the risk or peril of being called upon to defend such an action. The consideration is paid annually. If no action is brought during the life of the contract, the company gains the amount of this compensation, which it received for subjecting itself to the risk of being called upon to defend an action at its own expense.

Our attention has been called to Vredenburgh v. Physicians' Defense Co., 126 Ill. App. 509, and State v. Laylin, 73 Oh. St. 90, 76 N. E. 567, where it is held that this contract is a contract for services only. We are not able to accept the conclusion reached in these cases, because they ignore the fact that a physician is subject to a risk of financial loss from the bringing of an action for malpractice entirely separate and distinct from the loss which results when he is required to pay a judgment. Commonwealth v. Provident, 178 Pa. St. 636, 36 Atl. 197, 36 L. R. A. 589, construes a contract which has little, if any, resemblance to the one under consideration.

The judgment is therefore reversed.

LEWIS, J. (dissenting).

The statutory definition of insurance is comprehensive, but it does not follow that all contracts which contain a technical element of indemnity are insurance contracts. The statute should be read in the light of the development of insurance law, and the purpose of requiring insurance companies to become subject to the examination and control of the state. Mr. May defines insurance as a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss, and approves of the following definition: "Insurance is a contract by which the one party, in consideration of a price paid to him, adequate to the risk, becomes security to the other that he shall not suffer loss, prejudice, or damage by the happening of the perils specified to certain things which may be exposed to him." Chapter

175, § 3, Laws 1895,. defined insurance as an agreement by which one party, for a consideration, promises to pay money, or its equivalent, or do some act of value to the assured upon the destruction or injury of something in which the other party has an interest. Section 27 of that act defined the different kinds of insurance authorized under seven heads. While the definition of insurance now found in the Revised Laws of 1905 introduced the word "indemnity," the code also expanded and enlarged the scope of insurance, and the various purposes for which insurance companies may be incorporated are found in section 1597:

1. To insure against loss or damage to property on land by fire, lightning, hail, or tempest, or any or all of them.

2. To insure vessels, freight, goods, money, effects, and money lent on bottomry or respondentia against the perils of the sea and other perils usually insured against by marine insurance, including risks of inland navigation and transportation.

3. To insure property of the assured, or life, person, or property of another, for which the assured is liable, against loss or damage caused by the explosion of steam boilers.

4. To make contracts of life or endowment insurance, and grant, purchase, or dispose of annuities or endowments of any kind; but not including authority to any corporation transacting the business of life insurance in this state to take any other kinds of risks except those connected with or appertaining to insurance on life, or against accidents to or sickness of persons, and the granting, purchasing and disposing of annuities and endowments.

5. To insure against loss or damage by the sickness, bodily injury, or death by accident of the assured, or of any other person for whom the assured is responsible.

6. To guarantee the fidelity of persons in fiduciary positions, public or private, or to act as surety on official and other bonds, and for the performance of official or other obligations.

7. To insure owners and others interested in real estate against loss or damage by reason of defective titles, incumbrances, or otherwise.

100 M.—32

8. To insure against loss or damage by breakage of plate glass, located or in transit.

9. To insure against loss or damage by burglary or theft, or attempt thereat, or loss of money or securities in course of transportation.

10. To insure against loss or damage by water, caused by accidental breakage of automatic sprinkler heads.

11. To insure against loss or damage by death of live stock.

12. To guarantee merchants and those engaged in business and giving credit, from loss by reason of giving credit to those dealing with them; this shall be known as credit insurance.

Each of these subdivisions may be read with the greatest care, and nothing will be found embracing a subject such as the contract now under consideration. What the legislature had in mind in introducing the word "indemnity" in section 1596 was indemnity applicable to insurance as defined by the subsequent section 1597. The latter section covers all the recognized subjects of insurance which the statute treats of. I do not think this contract is one of indemnity, within the meaning of the statute, for the reason that it is limited in its scope, furnishing skilled services to certain professional men, and having no application to the general public, and that the term "expense," therein used, refers merely to the incidental expenses of conducting the trial, and is only an incidental matter to the main feature of the contract. This agreement is based upon a perfectly legitimate purpose. It proceeds upon the theory that the company is able to furnish, at less cost, the most desirable services obtainable to make such defense.

Another feature of insurance is lacking. The consideration is not adequate to the so-called risk. Instead of being built up on the principles of insurance to pay money or indemnity upon a contingency, it is, in substance, an agreement to furnish services. I attach no importance to the fact that respondent is a corporation and technically cannot practice law. That fact does not prevent it from furnishing the services described in the contract. In my judgment, the legislature never contemplated subjecting this class of service corporations to the expense and annoyance required by state inspection.

From a careful examination of the authorities and treatises upon

insurance, I have not been able to discover a single case where a contract similar to the one now under consideration was held to be a contract of insurance. I concur in the opinion of former Attorney General Douglas, of this state, wherein he holds that the company is empowered to, and does enter into a contract with the physicians of the state to furnish them and pay for the services of an attorney in actions of malpractice, and that such contract is not insurance within the definition adopted by the legislature. Such was also the opinion of the corporation counsel for the District of Columbia, and of the attorney general of the state of Missouri. To the same effect, counsel for the insurance commissioner of Maryland. I am informed, though I have not examined the opinion, that the appellate court of the First district of Illinois in the case of Vredenburgh, Ins. Supt. of Ill., v. This Respondent, 126 Ill. App. 509 (decided May 8, 1906) supra, that the contract was not one of insurance. I also call attention to the case of State v. Laylin, 73 Oh. St. 90, 76 N. E. 567, and Commonwealth v. Provident, 178 Pa. St. 636, 36 Atl. 197, 36 L. R. A. 589, to the same effect.

I therefore dissent.