## Beisel's Appeal

*George F. Coffin, Jr.*, for appellant.
*Robert E. James*, for Commonwealth.

LAUB, J., February 13, 1939.—This is an appeal from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania dismissing the petition of the present appellant for reassessment of her personal property tax for the year 1936 and allowing the assessment to stand.

The petition for the appeal sets forth certain facts, some of which are admitted in the answer filed by the Commonwealth to said petition.

From the admissions we therefore find that W. Clayton Hackett died on December 10, 1930; that the present petitioner is his daughter, then a minor, as appears from the admitted facts in the transcript, of whom the Easton National Bank became guardian; and said minor has now become of age and is married to a man named Beisel.

Petitioner was assessed by the Department of Revenue for the amount of $22.31 as personal property tax for the year 1936, and such assessment was based on alleged annuities of $18,165.

In his lifetime said W. Clayton Hackett obtained policies of insurance on his life in the Massachusetts Mu-

tual Life Insurance Company in the face amount of $25,000, and in The Equitable Life Assurance Society in the face amount of $10,000, the beneficiaries in both policies being his minor daughter, then Ann Hackett, the present petitioner.

In the application for insurance in the Massachusetts Mutual Life Insurance Company the following appears: "19. To whom is the amount of insurance to be paid in case of your death? To my daughter, Ann Hackett, in monthly installments of $125 under Option A." Option A, by reference to said insurance policy, provides as follows: "Equal installments, each of such an amount as may be elected, to continue until the proceeds, together with the interest herein specified, are exhausted; provided, that the final installment shall be for the balance only of said proceeds and specified interest. On each anniversary of the first installment, interest at not less than three percent per annum will be added to the unpaid balance of said proceeds." The application for insurance to the aforesaid Massachusetts Mutual Life Insurance Company bears date of September 24, 1923, and the date of the insurance policy is September 29, 1923, the same being put into force and effect as of September 24, 1923. It will therefore be noticed that this contract of life insurance became effective in the lifetime of W. Clayton Hackett who was the applicant for same and whose life was insured under the provisions of said policy, and that the contract was entered into between him and the said life insurance company at a time when the present petitioner was a minor as appears by the admissions at the time of hearing.

It will also be observed that said monthly payments of $125 to the present petitioner were due to the provisions of the aforesaid contract of insurance entered into not by herself, but by her deceased father in his lifetime, with the said Massachusetts Mutual Life Insurance Company, at a time when she was a minor.

In referring to the policy of life insurance in the Equitable Life Assurance Society, we find that the provisions of said policy insured the life of the said W. Clayton Hackett for $30,000, the application for such insurance specifying, "$10,000 policy to be issued to wife, $10,000 to daughter, and $10,000 to my estate." On the policy itself is found the following special provision:

"In compliance with the written request of the Insured, it is hereby specially provided that the Beneficiary under this policy, said Ann Hackett, shall be restricted to settlement in thirty annual installments as per Option 2, of the Modes of Settlement at Maturity of Policy. In lieu of each annual installment due under said Option there shall be substituted monthly installments equal to one-twelfth of the annual amount stated in the table under said Option. The Society will neither commute nor discount any of the said installments nor make any advance payments thereon, nor recognize any assignment or hypothecation of the installments herein referred to, or of any installment to become due thereon, without the written consent of the insured."

Such special provision bears date of December 12, 1924, which was in the lifetime of the insured, W. Clayton Hackett. We find on the policy the following provision bearing date December 24, 1930 (at a time when the insured, W. Clayton Hackett, was dead):

"This policy having matured by the death of the Insured, the amount of each monthly income installment payable in accordance with the terms of the policy (exclusive of any interest or excess interest dividend) will be $41.80 commencing on December 24, 1930. This settlement is carried on the Society's records under Supplementary Contract Account No. 18140."

The policy itself shows that for the $10,000 face value thereof, the insured, said decedent, designated as his beneficiary Ann Hackett, his daughter, who is the present petitioner. Underneath the designation of herself as beneficiary appears the following language, "Payable in ac-

cordance with the Special Provision dated December 12, 1924, on the third page hereof." Again it will be observed that whatever was done to form this contract of life insurance and the payments due thereunder was done between decedent, W. Clayton Hackett, and said Equitable Life Assurance Society, and that the present petitioner had nothing to do with same—that is, the formation of the contract or regulating the amount of payments due thereunder, she being at the time of said decedent's death a minor.

Under this statement of facts, has the Commonwealth of Pennsylvania the right to assess the present petitioner a personal property tax on the principal value of the funds (contended by the Commonwealth to be the principal value of annuities) from which she receives monthly payments from said insurance companies? The question in this case turns on whether or not the amounts received by her are to be regarded as annuities or proceeds of life insurance. In other words, even though petitioner had nothing to do with the creation of the contracts under which she now receives these monthly instalments of life insurance, can she nevertheless be made to pay a personal property tax on monthly instalments received from such funds of life insurance on the theory that the monthly instalments are no longer proceeds of life insurance but annuity payments, and that such principal amounts must be considered as the principal value of annuities.

By reference to the State Personal Property Tax Act of June 22, 1935, P. L. 414, we do not find life insurance policies or the payments derived therefrom set forth as taxable under section 3 of the provisions of said act, nor do we find any such authority in the reënacted State Personal Property Tax Act of May 18, 1937, P. L. 633, but we do find in said last-mentioned act that a tax may be assessed on the principal value of all annuities.

That it has not been the policy of the State of Pennsylvania to tax life insurance policies is shown by a very able opinion of Attorney General McCormick of Pennsylvania

in 1895, Taxation of Life Insurance, 4 Dist. R. 780, said opinion holding that no kind of life insurance policy is the subject of taxes for State purposes under existing laws.

Life insurance, unlike fire or marine insurance, is not a contract for indemnity, but is a contract to pay a certain sum of money in the event of death: Scott v. Dickson, Admr., etc., 108 Pa. 6.

In the case of Commonwealth v. Equitable Beneficial Assn., 137 Pa. 412, at page 419, the Supreme Court of Pennsylvania, speaking through Mr. Justice Clark, says:

"The general object or purpose of an insurance company is to afford indemnity or security against loss: its engagement is not founded in any philanthropic, benevolent, or charitable principle; it is a purely business adventure, in which one, for a stipulated consideration of premium per cent, engages to make up, wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to loss of property, to personal injury, or to loss of life. To grant indemnity or security against loss, for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance."

The opinion of the court below was affirmed in the case of Commonwealth ex rel. v. The Provident Bicycle Assn., 178 Pa. 636. At page 638 of the opinion of the court below, we find the following:

"In section one, May defines the transaction as 'A contract whereby for a consideration one undertakes to compensate another if he shall suffer loss;' and Phillips, in section one, defines it to be 'A contract whereby for a stipulated consideration one party undertakes to indemnify the other against certain risks.' The American and English Encyclopaedia of Law, vol. 11, page 280, expresses the same thought in slightly different language: 'A contract whereby one party agrees to indemnify another in case he shall suffer loss in respect of a specified subject by a specified peril.' Our own Supreme Court, in

distinguishing an insurance company from a beneficial association, thus describes the former: 'The general object or purpose of an insurance company is to afford indemnity or security against loss; its engagement is not founded in any philanthropic, benevolent or charitable principle; it is a purely business adventure, in which one for a stipulated consideration or premium per cent engages to make up wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to personal injury or loss of life. To grant indemnity or security against loss, for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance:' Com. v. Beneficial Association, 137 Pa. 419. These quotations, and others which might be added, do not specify the means by which indemnity is to be given; but obviously indemnity may conceivably be made either by a money payment, or in certain cases by repairing or replacing the object injured or destroyed. Accordingly many insurance policies offer the company an option to repair or replace, although the option is not often exercised."

The opinion of the court below was affirmed in the case of Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510. The opinion of the court below, at page 514 thereof, says:

"Insurance as generally understood is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. . . . The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment."

The annuity contract is almost the reverse of an insurance policy. In the insurance contract, the assured

pays the premium, in consideration whereof the company agrees to pay a stipulated sum, and thereafter annual payments are made to the annuitant: Carroll v. Equitable Life Assurance Society of U. S., 9 Fed. Supp. 223.

An annuity contract differs from one for life insurance in that the latter provides for the payment of a lump sum conditionally in consideration of periodical payments by the insured, while the former contemplates periodical payments of an annual amount, purchased by the annuitant for a stated sum. It has consequently been held that the rules applicable to life insurance do not govern an annuity contract: 3 C. J. 202 §4.

In view of the foregoing definitions of life insurance and annuities, we cannot hold that the monthly payments payable to petitioner in the instant case are annuity payments, but we hold they are payments of life insurance. In other words the monthly payments received by petitioner were not purchased by her as an annuitant for a stated sum. Such payments are received by her on account of her loss by reason of her father's death.

After a thorough examination of the Pennsylvania cases we have been able to find only one Pennsylvania case that has any facts similar to the instant case and that is the case of Duvall's Appeal, 33 D. & C. 238. In a very able opinion, Judge Corson of Montgomery County held (quoting from syllabus) :

"Where a life insurance policy provides that upon the death of the assured the beneficiary shall receive a monthly income for the balance of her life, with a proviso that should she die before the time of her life expectancy under the mortality tables any balance of the insurance fund shall be paid to others, and the beneficiary has no choice to elect any other form of compensation and surrenders the policy in return for a certificate evidencing her right to receive the monthly payments, such payments are made to her under a contract of insurance and not as an annuity, and the capitalized value thereof is not, there-

588

fore, subject to taxation under the Pennsylvania Personal Property Tax Act of May 18, 1937, P. L. 633."

And now, February 13, 1939, the appeal is sustained, and the order of the Pennsylvania Department of Revenue dated August 24, 1938, is reversed and said department is directed to reassess the 1936 personal property tax return of petitioner, eliminating therefrom personal property tax at present assessed on the capitalized value of the insurance funds, or the monthly payments received from the Massachusetts Mutual Life Insurance Company and The Equitable Life Assurance Society.