

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
XXXXJOHN BEN SHEPPERD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-6101
Re: Under the facts submitted is
the form of agreement in question
an insurance contract subjecting
the issuance of it to the supervi-
sion of the Board of Insurance
Commission?

We are in receipt of your request for an opinion on the above question, and same has been carefully considered. The form of contract and agreement submitted by you and made the basis of said question is as follows:

"CONTRACT FOR PERSONAL MEDICAL SERVICES

"STATE OF TEXAS {

"COUNTY OF {

"This memorandum of agreement is made and entered into this _____ day of _____, 1944, by and between _____, hereinafter called employer, and Drs. _____,
hereinafter called physicians.

"WITNESSETH,

I.

"For and in consideration of the sum of _____
Dollars paid by the employer on the _____ day of each month to the physicians at the physician's office in _____, Texas, said physicians agree to render the following services to and for the employer, subject to the limitations contained herein, to-wit:

"A. All office calls, including nursing care or treatments that the employer shall necessarily need, not exceeding three in any one week or ten on account of any one accident or any one period of sickness.

"B. Hospital confinement, including general nursing care and hospital service for the period the employer shall necessarily be confined therein, not exceeding twenty-one (21) days hospital service on any one period of sickness or accident in one twelve month period following the date of this memorandum of agreement.

"1. Private room or bed service, based on a $5.00 per day rate.

"2. All general nursing care and hospital care.

"C. All services of professional and non-professional employees of said physicians.

"D. Use of operating room when employer is a bed patient for a major or minor operation.

"E. All services of anesthetist if employed by physicians.

"F. Maternity services will be provided under this contract for a maximum of five days, including nursery care of newborn, if employer has kept this contract in continuous force for one year or more immediately prior to such hospital confinement.

II.

"A. All services provided herein are to be rendered at the Medical Center Hospital at _____, Texas, by said physicians.

"B. Either party to this contract may cancel the same at any time upon ten days written notice to the other party; said notices shall be sent by registered mail to such parties to the address as shown by this contract.

III.

"A. None of the services heretofore mentiond shall be performed by said physicians until said contract has been in force and effect for thirty (30) days.

"B. This contract does not cover drugs; supplies; services for incurable cases, ambulatory patients, semi-invalidism, self-destruction; losses sustained in violation of the law; cases coming under Hospital Insurance or

under provisions of any Workmen's Compensation or Employer's
Liability Insurance. This contract does not cover abortion;
syphilis, or complications arising therefrom, virulent or
contagious diseases; rest cures; mental or nervous disorders;
venereal diseases; tuberculosis.

IV.

"In the event that all facilities of the Medical
Center Hospital are in use because of an epidemic or
any act beyond the control of the physicians, the employ-
er shall wait until facilities are available for any
hospital services provided for in this contract; provided,
however, that if the condition of the employer is such
that immediate hospitalization is necessary, the hospital
services shall be rendered at the time of the emergency.

V.

"This contract shall not cover any injuries or acci-
dents that happened before or were in existence at the time
of the signing of this contract.

_____

_____

_____ "

_____

Article 4716 of Vernon's Annotated Revised Civil Statutes of
Texas of 1925 reads in part as follows:

". . . An accident insurance company shall be
deemed to be a corporation doing business under any
charter involving the payment of money or other thing
of value, conditioned upon the injury, disablement or
death of persons resulting from traveling or general
accidents by land or water . . .

". . . A health insurance company shall be deem-
ed to be a corporation doing business under any charter
involving the payment of any amount of money, or other
thing of value, conditioned upon loss by reason of dis-
ability due to sickness or ill-health . . ."

It will be noted that the above definitions involve two
things. First, the payment of money, or other thing of value, and second,
loss through injury, disablement or disability by accident, sickness or
ill-health.

There are no Texas decisions setting forth what may or may not be included within the above quoted provisions of Article 4716, but there are several well-known and generally accepted definitions of insurance and statements of what may be included in a contract or agreement of insurance, each and all of which can be, and were intended to be, included within said quoted provisions, and some of these we desire to set out here.

"The word 'insurance' is defined in Texas Jurisprudence, Vol. 24, page 650, as follows:

"'Insurance is a word of comprehensive and varied meaning. In a general sense the term signifies an agreement, for a consideration, to pay a sum of money upon the happening of a particular event or contingency, or indemnify for loss in respect of a specified subject by specified perils; in other words, an undertaking by one party, usually called the insurer, to protect the other party, generally designated as the insured or assured, from loss arising from named risks, for the consideration and upon the terms and under the conditions recited.'"

Couch on Insurance, Vol. 1, Sec. 2, p. 3, defines "insurance" as follows:

"The terms 'assurance' and 'insurance' are used interchangeably, although the former is seldom employed. Strictly defined, insurance, except as to life and accident covering death, and which, as hereinafter shown, are not strictly contracts of indemnity, is a contract whereby one for a consideration agrees to indemnify another for liability damage, or loss by perils to which the subject insured may be exposed. In life or accident insurance it is the life or health of the person that is the subject of the contract. A much cited and often quoted definition of insurance is as follows: 'A contract of insurance is an agreement by which one party, for a consideration (which is usually paid in money either in one sum or at different times during the continuance of the risk), promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest. In fire insurance and in marine insurance the thing insured is property; in life or accident insurance it is the life or health of the person.' In a general sense 'insurance' is a contract, for a consideration, to pay a sum of money upon the happening of a particular event or contingency, or indemnity for loss in respect of a specified subject by specified perils; that is, an undertaking by one party to protect the other party from loss arising from named risks, for the consideration and upon the terms and under the conditions recited. . . ."

Cooley's Briefs on Insurance, 2nd Ed., Vol. 1, p. 7, also lays down the following rule:

"The primary requisite essential to a contract of insurance is the presence of a risk of loss (First Nat. Bank v. National Surety Co. 228 N.Y. 469, 127 N. E. 479, reversing 182 App. Div. 262, 169 N. Y. S. 774). The insurer, in return for a consideration paid to him by the insured, assumes this risk, and when such a risk is assumed by one of the parties to the contract, whatever form the contract may take, it is in fact a contract of insurance. Risk is essentially the subject of the contract.

An analysis of the above definitions and statements will show that the eseantial elements of an insurance contract are :(1) an insurer; (2) a consideration; (3) a person insured or his beneficiary; and (4) a hazard or peril insured against whereby the insured or his beneficiary may suffer loss or injury. In our opinion, each of these essential elements is present in the contract here under consideration, in that, the physicians named therein are the insurer, since they agree to render and furnish the services and other things of value therein named and required under the terms thereof; the monthly payment constitutes a consideration; the employer is the person injured; and the hazard or peril insured against is the payment of medical, hospital and other costs incident to an accident or ill-health when and if said employer should be injured or in ill-health. But the contention may be made that, since such physicians render their own personal services, this in itself would make such a contract one for personal services, instead of insurance, without regard to the fact that such physicians also agree in said contract to furnish the various other services and things provided for therein. The decisions of our courts, however, in dealing with similar though different situations, are to the contrary.

In the case of National Auto Service Corp. v. State, 55 S. W. (2d) 209, writ dismissed, the Austin Court of Civil Appeals was dealing with a situation where a corporation had issued to its members a membership certificate which provided, among other things, that for annual dues of $25.00 it would cause to be repaired in its membership garages during that year any damage to the members' automobile caused by an accident not less than $7.50 nor more than $250.00. The record also discloses that the corporation operated in accordance with the provisions of the certificate. In holding said contract one of insurance, the court said:

". . . In the instant case we thing it clearly appears that the purpose of the contract made by appellant was, for a fixed consideration, to indemnify the holder of the certificate against loss resulting from accidental damage to his car within the limits fixed by the certificate, and that it constituted an insurance contract under the rules above announced."

In the case of Guardian Burial Ass'n. v. Rodgers, 163 S.W. (2d) 851, the Court held the certificate there under consideration to be a policy of insurance, the following merchandise, services, etc., being what was agreed to be furnished and the agreement to furnish same was made the basis of said holding:

> ". . . An embossed cloth covered silk lined cypress casket, embalming and prepation of the body, funeral coach, two funeral cars, use of funeral chapel, transferring remains, burial permit, door badge, pallbearer gloves, press notice, funeral equipment for any denomination, and music furnished at funeral home chapel, . . ."

It is true that there have been decisions in other states dealing with the furnishing of services some of which have been held not to be insurance, but none of said opinions have been where the contract was like that here under consideration. We desire to here quote from a brief prepared sometime ago by Assistant Attorney General R. Dean Moorhead when this question was under consideration under a different set of facts:

> "It is true that certain contracts for contingent services have been held not to constitute insurance. Generally these involve merchandising schemes designed to promote the business of the promisor. Thus, an agreement by a glazier to replace free all plate glass installed by him if it were broken within a given period has been held to be a contingent service agreement rather than a contract of insurance, Moresh v. O'Regan, 120 N. J. Eq. 534, 187 Atl. 619 (1938), (and on exactly the same state of facts the contrary has been held, People v. Roschli, 275 N. Y. 26, 9 N. E. (2d) 763 (1937) ). Likewise a promise to a vendor of lightning rods to repair any damage if lightning struck a house equipped with one of his rods has been held not to be insurance, Cole v. Haven, 7 N. W. 383 (Iowa, 1880). In Pennsylvania a bicycle dealer's promise to repair and if necessary to replace bicycles purchased from him was held not to be insurance, Comm. v. Provident Bicycle Ass'n. 178 Pa. 636, 36 Atl. 197 (1897) but in Delaware an association of bicycle owners made the same promise to their members and was held to be in the insurance business, In re Solebury Mut. Protective Society, 3 Del. Co. R. 139 (1885). In Ohio a tire dealer's promise to repair and, if necessary, replace tires purchased from hii within a specified period was held to be insurance, State v. Western Auto Supply Co., 134 Ohio St. 163, 16 N. E. (2d) 256 (1938) and the same concl sion was reached in New York with respect to a jeweler's promise relating to watches purchased from him, Ollendorff Watch Co. v. Pink, 279 N. Y. 32, 17 N. E. (2d) 676 (1938). Likewise, in New York the Attorney General has ruled that a hospital's promise to furnish free service in maternity cases if the anticipated infant turns out to be twins constitutes insurance.

"Thus it can be seen that not all courts accept the 'contingent service -- insurance' distinction and those that have accepted it have confined it to cases where the promised service is closely related to and is incidental to the main business of the promisor. So far as I know, Texas courts have never attempted to draw the distinction and, in the National Auto Service Corp. case, supra, have expressly rejected it.

"Moreover, as is pointed out in Vance on Insurance (1930) 61, 'a company really carrying on an insurance business will not be allowed to masquerade as a service organization.' This is well illustrated by burial associations which promise not a sum of money upon death but rather a prescribed funeral and trimmings. Here again no money goes to the promisee (in fact a theorist could even question whether he receives services) yet such organizations have uniformly been held to be in the insurance business and are so recognized by Texas law."

There is also a line of cases which hold to be insurance a contract issued to physicians in consideration of a specified yearly contribution, guaranteeing that, in case they were sued for damages for civil malpractice, a local attorney would be employed, in whose selection said physician should have a voice, who, with the physicians' attorney, would defend the case without expense to the physicians to the extent of the exhaustion of the named sum, relieving such physicians from liability for costs and attorney's fee to that extent. Physicians Defense Company v. Cooper, State Insurance Comm. 199 Fed. 576. The Court there held as follows:

"Such a contract, in our opinion, cannot be classed as a contract for personal services. The company is not itself an attorney, and does not undertake the defense as such. What it does undertake is, in case of suit, to employ a local attorney, in whose selection the holder shall have a voice, who, with the company's attorney, will defend the case, and to relieve the holder from the expense thereof, an expensr which must follow the happening of the very contingency provided against. Not only this, but the company must relive the holder of paying the costs of suit. Suppose the contract had been to repay to the holder whatever sums, not exceeding $5,000, he should be required to pay out for attorneys and costs in case of such litigation. Could there be any question that there would be a contract of insurance? We think not. Can it change the character of the contract on this respect that it purports to hold the holder harmless against the payment of such expenses and costs? The contract, reduced to its simplest idea, is but an agreement to pay the expenses and costs that the holder would have to pay in the contingency specified. This is indemnity pure and simple, and with whatever verbiage the contract may be clothed it

does not serve to cover its real purpose, which is one to indemnify the holder against damage and liability for attorney's expenses and costs of defense, in the event he is sued for malpractice.

"It is faulty logic to say that this is not a loss, damage, or liability of the contract holder, premising that he does not incur it, and concluding that it is the liability of the Defense Company. The loss, damage, or liability follows the suit for malpractice; and, were it not for the contract of the Defense Company, the holder must bear it. Whose loss, damage, or liability would it then be? That of the person sued, of course. It is this very burden which the Defense Company agrees to bear in case the contingency of the holder being sued happens, and this is insuring the holder against the risk dependent upon the contingency. Looking on the other side, if this be a contract for personal services, why limit the amount of the services to be rendered in dollars and cents? Attorneys do not take contract for defending parties sued in that way. How peculiar it would be for an attorney to say: 'I will engage in your defense $5,000 worth.' It would follow that when the fund was exhausted the attorney would quit, whether the case was brought to a close or not. The very uncertainty of the amount to be paid by the Defense Company to meet the exigency contracted against is persuasive that the contract is not one of hiring, but one rather of indemnity. And such is our conclusion. See Physicians' Defense Co. v. O'Brien, 100 Minn. 490. 111 N.W. 396. The reasoning of the court in this case is both cogent and persuasive."

A like holding was made by the Court of Appeals of Kentucky in the case of Allin v. Motorist's Alliance of America, Inc. 29 S.W. (2d) 19, which involved the employment of an attorney to perform various services for owners of automobiles who executed such contracts, and the court held that said corporation was engaged in insurance even though it had agreed to furnish only personal services. We quote therefrom the following:

"It is not good logic to argue that the furnishing of an attorney to represent the owner of an automobile in his defense in court actions is not a loss indemnified against. Insurance companies are authorized to indemnify against such losses as arise out of the ownership, operation, or maintenance of an automobile, If, in the operation of his automobile, he has a loss resulting in a claim against him, the collection of which is prosecuted in a court, he must have an attorney and pay for his services, and it would be futile to argue that the contract in question does not indemnify him against a loss. If it provided for the payment of an

attorney fee not to exceed a certain sum when the owner of
the automobile should be haled into court by reason of
something growing out of his ownership or operation of his
automobile, we believe that no one would argue that it was
not insurance. The difference is one of form and not of
substance. The contract provides against any loss growing
out of the payment of attorney fees by the simple expediant
of agreeing to furnish and pay the attorney. The above
quotation from the statute was inserted by chapter 14 of the
Acts of 1922. Its purpose was to authorize the owner of an
automobile to insure against such losses as arise out of the
ownership, operation, or maintenance of the same. The con-
tract holder is required to do nothing other than to notify
appellee that he needs an attorney, and, upon such notifica-
tion, he is relieved of all expenses incident to the employ-
ment of an attorney to represent him in his defense. It is
true that the contract does not provide for the payment of
any sum directly to the contractee, but it does provide for
the relieving of the contractee of the expenses of the emplc -
ment of an attorney. The attorney is but the agent represen-
ting the contractee in the case in court, and payment to him
directly cannot well be distinguished from the act of paying
the contractee directly and his paying the attorney who may
represent him."

In the instant case the contract is to be made direct between
the employer and the physician, but we do not see where that can make any
difference in the ultimate result, or change the contract from one of insur-
ance to merely one of personal services, since it seems clear that the pur-
pose of the contract is to provide for indemnification against the expenses
of illness or injury as provided for in said contract rather than to provide
for the services of the physicians. It is our opinion, therefore, that
under the facts submitted the form of agreement in question is an insurance
contract subjecting the issuance of it to the supervision of the Board of
Insurance Commissioners.

In further support of this conclusion, your attention is direct-
ed to the fact that the Regular Session of the Fofty-fifth Legislature, (H. B.
893, Ch. 257, p. 522 of the Acts thereof), in amending Sec. 6 of H.B. No. 303,
being Ch. 245, p. 856 of the Acts of the R gular Session of the Forty-third
Legislature as amended by H. B. No. 373, Ch. 264, p. 651 of the Acts of the
Regular Session of the Forty-fourth Legislature, (Art. 4859f, Vernon's Ann.
Rev. Civ. Stat. of Texas), included in said amendment the following provision:

". . .

"No law of this State pertaining to insurance shall
be construed to apply to the establihsment and maintenance
by individuals, associations, or corporations of sanatori-
ums or hospitals for the reception and care of patients for

the medical, surgical, or hygienic treatment of
any and all diseases, or for the instruction of
nurses in the care and treatment of diseases and
in hygiene, or for any and all such purposes,
nor to the furnishing of any or all of such serv-
ices, care of, instruction in, or in connection with
any such institution, under or by virtue of any con-
tract made for such purposes with residents of the
county in w hich such sanatorium or hospital is
located. . . ."

Said Section 6 was again amended in 1939 (H.B. No. 626, Ch.
7, p. 414, of the Acts of the R$_e$gular Session of the Forty-sixth
Legislature) and in 1941, (H.B. 996, Ch. 535, p. 860 of the Acts of
the Regular Season of the Forty-seventh Legislature) but said
said above quoted provision was left out of said amendments. This
action of the Legislature clearly shows that it was not its inten-
tion to except such contracts as that here under consideration from
the insurance laws of this State, as well also that its opinion was
that the laws of this State pertaining to insurance do include such
contracts.

Trusting that this satisfactorily answers your inquiry, we
are

Yours very t ruly,

ATTORNEY GENERAL OF TEXAS

APPROVED SET 19, 1944
/s/ GROVER SELLERS
ATTORNEY GENERAL OF TEXAS

By
/s/ Jas. W. Bassett
Jas. W. Bassett
Assistant

JWB:FO:egw

APPROVED
Opinion Committee
By BWB
Chairman