## REAL ESTATE TITLE INS. CO. v. DIS-TRICT OF COLUMBIA.

## COLUMBIA TITLE INS. CO. v. SAME.

### Nos. 9414, 9415.

United States Court of Appeals
District of Columbia.

Argued March 13, 1947.

Decided May 12, 1947.

Mr. Louis M. Denit, of Washington, D. C., with whom Messrs. Thomas S. Jackson, A. Leckie Cox and Coleman L. Diamond, all of Washington, D. C., were on the brief, for petitioners.

Mr. Harry L. Walker, Assistant Corporation Counsel for the District of Columbia, of Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, both of Washington, D. C., were on the brief, for respondent.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

GRONER, C. J.

The problem in this case is to determine under which of two local statutes petitioners are taxable. The question arises under these circumstances: Petitioners are what are commonly known as title insurance companies and have for about seventy years operated under certificates of incorporation authorizing them "to insure titles to real estate in the District of Columbia and generally transact and perform all business relating to said object." In 1937, a new taxing statute[1] was passed applicable to all companies organized as insurance companies, which provided as to title companies that they, like other insurance companies, should pay a tax equal to two per centum of their policy and membership fees and net premium receipts, and that "such tax shall be in lieu of all other taxes" with exceptions not applicable here. From and after the passage of this statute and until the present controversy, petitioners were assessed and paid taxes under its provisions, but in 1945 the Assessor of the District of Columbia reversed his former ruling and now contends that petitioners

---

[1] 50 Stat. 676 (1937), 47 D.C.Code § 1806 (1940).

are liable under a 1904 statute.[2] The tax demanded was paid under protest and upon appeal to the Board of Tax Appeals, the ruling of the Assessor was affirmed. The Board held that the greater part of the business done by petitioners was not insurance; that they were not within the terms of the 1937 Act but were taxable under the earlier Act.

We are of the opinion that the Board's ruling was wrong. Petitioners are organized as insurance companies and have adhered throughout to the stated purposes of their charter, have registered as insurance companies, have complied with the laws applicable to insurance companies and have held themselves out to the public as insurance companies. They operate upon a joint basis and their contracts and obligations are made and entered into in their joint names and on their joint responsibilities. They neither lend money nor engage in the sale of mortgage notes or bonds; their business consists solely of issuing either what are called *certificates of title* [3] or *title policies* to real estate in the District of Columbia and such further incidental transactions as relate to these main objectives. The difference between the two forms of policies is that in one they insure against any and all defects of the *record* title; in the other against all defects from whatever source. Petitioners' earnings are derived from fees or premiums from title examinations resulting in the issuance of one or the other of the two mentioned policy forms. Admittedly, their "title policies" are in all respects insurance policies. The Board's ruling, however, is that this is not also true of their "title certificates," and the reason of this, apparently, is that in the latter, petitioners "certify" as to validity as distinguished from "guaranteeing" the title; in short, that in the use of the word "certify" they assume no liability except for negligence in the title examination, and that this does not constitute insurance. But this position is clearly wrong for it ignores the provision in the policy that it is issued to, and for the benefit of, the buyer of the property in process of transfer, conditioned that the liability shall be based upon the consideration paid petitioners and limited to an amount which invariably is the purchase price of the property. Or, stated differently, that the company *certifies* that the title is good of record and that in the event that it should prove not to be so, the company will make good the loss to the amount of its stated liability. That this is insurance goes without saying.

Obviously the conclusion of the Board is predicated entirely on the use in the policy of the word "certify" rather than on the use of the word "guarantee." To insist that a single word of a contract can exist in a vacuum and convey a strict literal meaning is illogical. The Supreme Court of Iowa, when asked to decide a case on the defini-

---

[2] 33 Stat. 564 (1904), 47 D.C.Code § 1702 (1940).

[3] "Certificate of Title.

Case No. ............

Dated ............

The Real Estate Title Insurance Company of the District of Columbia

and

The Columbia Title Insurance Company of the District of Columbia,

Corporations, in consideration of ...... ............. Dollars to them paid by .......... do hereby certify .......... unto said .......... that .......... the title to .................. situate in the .............. of Washington, District of Columbia, is, at the date hereof, good in fee simple in .......... .......... and is not now charged or affected by any suit at Law or in Equity, or by any existing lien or encumbrance of any kind whatsoever, appearing of record, except by unpaid taxes and assessments, if any (as to which taxes and assessments, the Assessor of Taxes will certify) ................... This Certificate is issued to and for the benefit only of ................. and on condition that the liability of these Companies hereunder, based upon the consideration paid to them as above stated, is limited in any event, to ............... thousand dollars.

The Real Estate Title Insurance Company, of the District of Columbia
The Columbia Title Insurance Company, of the District of Columbia,

...................... 
*President.*

Attest:

...................
*Secretary.*"

tion of the word "premiums," declined to do so stating:

"But a mere definition is not always a safe foundation for correct conclusions. One reason is that, except in mathematics, it is difficult to frame *exhaustive* definitions of words. * * * Consequently, unless the authority offering the definition has undertaken the difficult task of framing a definition that is exhaustive, and has succeeded in such undertaking, error may result if there be reliance upon the element of exhaustiveness." Northwestern Mutual Life Insurance Co. v. Murphy, 1937, 223 Iowa 333, 336, 271 N.W. 899, 900, 109 A.L.R. 1054.

We are of opinion the word must be read in its general significance and in harmony with the contract with which it is used; here it can mean nothing less than guaranty or warranty. This is particularly true when it is remembered that the rule is that a contract of insurance can not be changed by the use or absence of particular words. The courts will always look behind the terminology to ascertain what the parties intended in making the contract. Hunt v. Public Mutual Ben. Foundation, 3 Cir., 1943, 94 F.2d 749, 750, certiorari denied, 1938, 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393; Benevolent Burial Ass'n, Inc., v. Harrison, 1935, 181 Ga. 230, 238, 181 S.E. 829, 833; Allin v. Motorists' Alliance of America, 1930, 234 Ky. 714, 723, 29 S.W.2d 19, 23, 71 A.L.R. 688; State v. Spalding, 1926, 166 Minn. 167, 170, 207 N.W. 317, 318; State ex rel. Martin v. Dane County Mutual Ben. Ass'n, 1945, 247 Wis. 220, 231, 19 N.W.2d 303, 308.

In the cases at hand the record abundantly shows that for more than half a century the general understanding of petitioners, the bar, and the public has been that each of the policies issued by petitioners creates a limited liability payable to the holder upon the breach of its conditions. It is not their work as title examiners that petitioners insure. What they do certify is that the title to the property involved is good and marketable and their liability is conditioned upon the breach of this certification. This by every token is insurance and nothing else. It would be a shock to the thousands of present policyholders of these companies to be told that all of this is untrue and that petitioners' liability is limited to a showing of negligence in the examination of the land records of the District. We accordingly hold that the policies in question are insurance policies and that petitioners' liability is upon an absolute guaranty of title to the extent expressed therein. It follows, therefore, that petitioners are insurance companies under the rule of the Supreme Court in United States v. Home Title Co., 1932, 285 U.S. 191, 52 S.Ct. 319, 76 L.Ed. 695, and should be taxable solely under Section 47—1806 of the District of Columbia Code.

Reversed.