Wesley M. OLER, Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Appellee.**

No. 6421.

District of Columbia Court of Appeals.

Argued Sept. 26, 1972.

Decided Nov. 29, 1972.
Rehearing En Banc Denied Jan. 31, 1973.

Daniel Partridge, III, with whom John D. Perkins, Washington, D. C., was on the brief, for appellant.

Gary W. Brown, with whom Gerald W. Farquhar, Washington, D. C., was on the brief, for appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

Dr. Oler, a physician, initiated proceedings in the United States District Court for the District of Columbia (District Court) for the appointment of a temporary and a permanent conservator [1] on behalf of

1. D.C.Code 1967, § 21–1501 (Supp. V, 1972), and D.C.Code 1967, § 21–1505.

one of his patients. He averred that the patient was suffering from a mental illness which would result in a dissipation of his assets to the detriment of his children and wife, and which further would make him unable to afford needed expensive treatment. A temporary conservator was appointed by the District Court but was later discharged and the patient's property rights restored. At this point, Dr. Oler petitioned the court for reimbursement of his costs and attorney's fees resulting from the temporary conservatorship. In so doing he was called upon to defend his actions in having initiated the proceedings to have a temporary guardian appointed for the patient.[2] Dr. Oler was successful in defending his actions in bringing the proceedings, but the District Court denied his petition for costs and attorney's fees. He now seeks to have Liberty Mutual Insurance Company (Liberty Mutual), his malpractice insurance carrier, pay the costs and fees of that defense. The action seeking that relief was dismissed by the trial court on the basis of the opening statements of the parties, there being no dispute as to material facts. We treat the case as having been decided on a defense motion for summary judgment,[3] and affirm.

The provisions of the malpractice insurance policy provide in material part that Liberty Mutual will

"1. . . . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury, sickness, disease or death caused by:

(a) malpractice, error or mistake in rendering or failing to render professional services in the practice of the insured's profession, committed

(1) by the insured, . . ."

* * * * * *

and will

"(a) defend any suit against the insured alleging such injury, sickness, disease or death and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation, negotiation and, with the written consent of the insured, settlement of any claim or suit as the company deems expedient."

Dr. Oler argues (1) that the determination by the District Court that the conservator proceedings were reasonably justified and not unwarrantedly motivated by him would be res judicata if a malpractice suit were instituted against him based on his commencement of conservator proceedings; and (2) that if such a determination were not res judicata, he nonetheless and in reality was defending his judgment and actions in bringing the conservator proceedings in a context similar to a malpractice suit—*i. e.,* that he did not act in bad faith or negligently. He also contends that the conservator proceedings were part of the medical "services in the practice of the insured's profession" within the meaning of the policy.

Liberty Mutual takes the position (1) that these costs and fees are not "damages because of injury, sickness, disease or death caused by . . . malpractice, error or mistake"; and (2) that the fee questions raised in the conservator proceedings were not a *"suit against the insured alleging such injury, sickness, disease or death . . . ."* (Emphasis supplied.) It also contends that the proceedings brought by the doctor were not related to actual medical services which the malpractice insurance contemplated.

---

2. Counsel for Dr. Oler had attempted to withdraw from the proceedings and an effort to have Liberty Mutual represent the doctor at that stage was unsuccessful.

3. *See* Owen v. Kronheim, 113 U.S.App. D.C. 81, 304 F.2d 957 (1962); Riley v. Titus, 89 U.S.App.D.C. 79, 190 F.2d 653 (1951).

The trial court took the view that the term "injury" in the policy meant bodily injury and not the kind of damages or costs involved in the conservator proceedings.

■ The respective rights of the parties to an insurance policy must be determined by the contract of insurance. 1 Couch on Insurance 2d, § 15: 1 (1959). As a general rule, unless it is obvious that words which appear in an insurance policy are intended to be used in a technical connotation, the words will be given the meaning which common speech imparts. Real Estate Title Insurance Co. v. District of Columbia, 82 U.S.App.D.C. 170, 161 F.2d 887 (1947); Betts v. Massachusetts Bonding & Insurance Co., 90 N.J.L. 632, 101 A. 257 (1917).

■ To state Dr. Oler's propositions is to refute them. Clearly the context in which he incurred the expenses and costs in the conservator proceedings does not amount to a "suit against the insured". Moreover, even if he were in reality to be viewed in a loose sense as a defendant to a counterclaim arising from those proceedings, it cannot be said that he was required to defend against a claim alleging "injury, sickness, disease . . ." caused by "malpractice, error or mistake".

■ The contention that the District Court proceedings in effect were equivalent to medical services rendered by Dr. Oler is not supported by the record. Reliance is placed exclusively on the contents of the Petition for Appointment of a Conservator. That petition reveals only that the conservator allegedly was needed to preserve assets of the patient, else "he will be deprived of treatment he needs." However well intentioned were Dr. Oler's efforts in the conservator proceedings, certainly those efforts did not constitute the rendering of professional medical services within the purview of the malpractice policy. Our holding that these were not medical services for the patient is further sup-

ported by the fact that the initiating pleading stated that the conservator action was primarily for the purpose of maintaining the standard of living of the patient's wife and children in addition to insuring funds for his treatment. The appointment of a conservator was in no way alleged or shown to be part of a course of medical treatment rendered by the doctor.

Therefore, since the common-speech meaning of the terms of the policy precludes Dr. Oler's recovery of costs and fees, the judgment in favor of Liberty Mutual was correct as a matter of law, and it is

Affirmed.