PHYSICIANS' DEFENSE CO. v. COOPER, State Ins. Com'r.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,068.

1. INSURANCE (§ 124*) — WHAT CONSTITUTES — "CONSIDERATION" — "RISK" — "INDEMNITY."

"Insurance" is a contract by which one party, in consideration of a price paid adequate to the risk, becomes security to the other that he may not suffer loss, prejudice, or damage by the happening of the perils specified to certain things which may be exposed to them. The ingredients of the contract are the consideration, the risk, and the indemnity. The "consideration" is the premium for the insurer's undertaking; the "risk," the perils or contingencies against which the assured is protected; and the "indemnity," the stipulated desideratum to be paid to the assured in case he has suffered loss or damage through the perils or contingencies specified.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 172, 176, 178; Dec. Dig. § 124.*

For other definitions, see Words and Phrases, vol. 4, pp. 3674–3677; vol. 2, pp. 1444–1447; vol. 8, p. 7612; vol. 4, pp. 3539, 3540.]

2. INSURANCE (§ 2*)—NATURE OF BUSINESS—DEFENSE OF LITIGATION.

Complainant, in consideration of a specified yearly consideration, issued a contract to physicians, guaranteeing that, in case they were sued for damages for civil malpractice, complainant agreed to employ a local attorney, in whose selection the contract holder should have a voice, who, with the defendant's attorney, would defend the case without expense to the contract holder to the extent of the exhaustion of the sum named in the policy, which for the defense of one suit was $5,000, or not to exceed $10,000 in any one year in case more than one suit was brought against such holder, relieving the latter from liability for costs and attorney's fees to that extent. *Held*, that complainant was engaged in the insurance business, within Civ. Code Cal. §§ 2527, 2531, 2532, 2534, regulating insurance, and that complainant was not entitled to do business within the state without complying with the insurance laws.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1½; Dec. Dig. § 2.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit by the Physicians' Defense Company against E. C. Cooper, Insurance Commissioner of the State of California. Judgment for defendant (188 Fed. 832), and complainant appeals. Affirmed.

The Physicians' Defense Company is a corporation of Indiana. It is engaged in a business whereby it issues to its patrons and customers a form

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of contract in purport as follows: In consideration of the printed application and the sum of $15, being the consideration of one year's defense, and the further payment of $15 annually during the life of the contract, the Physicians' Defense Company agrees to defend the legally qualified physician "against all suits for damages for civil malpractice, based on professional services rendered by himself or his agent during the term of this contract, at its own expense, not exceeding $5,000 in defense of any one suit, nor exceeding in the aggregate $10,000 in defense of suits based on services rendered by the holder hereof, or his agent, within one year from the date of this contract, or within any one year for which this contract shall be renewed, all in the manner and upon the conditions hereinbelow stated." After providing for notice to the company of suit brought against the physician for malpractice, the agreement further provides: "Upon receipt of notice from the holder hereof that a suit has been commenced against him for damages for civil malpractice, the company will employ a local attorney, in whose selection the holder hereof shall have a voice, who, together with the company's attorney, will defend the case without expense to the holder hereof. Such defense will be maintained until final judgment shall have been obtained in favor of the holder hereof, or until all remedies by appeal, writ of error, or other legal proceedings shall have been exhausted, or until the above mentioned sums shall have been expended in said defense, providing that this contract does not cover suits based upon criminal acts or suits involving the collection of fees for services. Said company does not obligate itself to pay or to assume or to secure the payment of any judgment rendered against the holder hereof, in any suit defended by it. * * * Each consecutive full year's renewal of this contract shall add five per cent. (5%) of the principal sum to the amount for the defense of any one suit, and to the amount for the defense of any number of suits within one year, conformably with the table of accumulations indorsed hereon, but such addition shall never exceed fifty per cent. (50%) of the aforesaid principal sums. This contract shall not lapse at the end of the time as stated above, if the holder hereof shall pay the annual consideration in advance at the home office in Ft. Wayne, Indiana, or to an authorized agent of the company, in exchange for the company's receipt, signed by the president and secretary, and countersigned by the agent, but shall continue in force for the term or terms for which such annual consideration shall be paid."

The plaintiff, the appellant here, by its bill of complaint shows that it commenced operations in California in September, 1902, and has since so continued, building up a large and remunerative business, but that it has not filed the bond provided by section 623 of the Political Code of the state, nor has it procured the certificate of authority required by section 596 of such Code to be obtained by companies transacting an insurance business within the state, nor any certificate or certificates of authority to do business within the state, other than the annual certificates issued by the Secretary of State to foreign corporations upon payment of the license tax imposed thereon by the laws of the state. It is further shown that the defendant, being the Insurance Commissioner of the state, claiming that plaintiff is engaged in insurance business, asserts that plaintiff has no right nor authority to transact such business within the state without first filing a bond as required by said section 623 of the Political Code, and having issued to it a certificate of authority under section 596 of such Code, and threatens to prevent plaintiff from further transacting business within the state unless it complies with the provisions of said sections. An injunction is prayed against the threatened acts of the Insurance Commissioner. The sufficiency of the bill was tested by a demurrer thereto, which was sustained, and, a decree having been given and entered dismissing the bill, the plaintiff appeals.

Stanley Moore and Goodfellow, Eells & Orrick, all of San Francisco, Cal., for appellant.

U. S. Webb, Atty. Gen., and E. B. Power, Asst. Atty. Gen., both of San Francisco, Cal., for appellee.

199 F.—37

Before GILBERT and ROSS, Circuit Judges, and WOLVER-TON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). But one question is presented on this appeal, which is whether the plaintiff is transacting an insurance business within the meaning of the statutes of California relating to the subject. If it is, it is admitted that the Insurance Commissioner's position is the correct one. If not, then the Commissioner should be restrained from interference with plaintiff's continuing to transact business with the state.

All persons and companies are prohibited from transacting insurance business within the state of California without first obtaining a certificate of authority from the Insurance Commissioner, and filing a bond as may be required by such Commissioner. Sections 596 and 623, Political Code. The Civil Code of the state, under chapter 1 of title 11, "Insurance in General," defines insurance to be:

"A contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event." Section 2527, Pomeroy's Civil Code of California.

Section 2531 declares what events may be insured against, namely:

"Any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him."

But the provisions of the chapter (section 2532) do not authorize insurance pertaining to a lottery or lottery drawing a prize. It is further declared (section 2534) that:

"All kinds of insurance are subject to the provisions of this chapter."

A person or company engaging in such business as is here attempted to be defined may be said to be transacting insurance business.

[1] The statutory definition of insurance does not differ greatly from that usually given by lexicographers, text-writers and judges, and yet it is practically as comprehensive as any. Webster defines it as:

"The act of insuring against loss or damage by a contingent event; a contract whereby one party undertakes to indemnify or guarantee the other against loss by certain specified risks." Webst. Dict. "Insurance."

The Standard Dictionary defines it as:

"An act or system of insuring or assuring against loss; specifically, the system by or under which indemnity or pecuniary payment is guaranteed by one party or several parties to another party, in certain contingencies, upon specified terms."

And the Century Dictionary:

"In law, a contract by which one party, for an agreed consideration, which is proportioned to the risk involved, undertakes to compensate the other for loss on a specified thing from specified causes."

As to the text-writers, May defines insurance as:

"A contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss."

Such, says the author, is the definition of the term in its most general terms, and, speaking further, he says:

"It had its origin in the necessities of commerce. It has kept pace with its progress, expanded to meet its rising wants and to cover its ever-widening fields, and, under the guidance of the spirit of modern enterprise, tempered by a prudent forecast, it has, from time to time, with wonderful facility, adapted itself to the new interests of an advancing civilization. It is applicable to every form of possible loss. Wherever danger is apprehended, or protection required, it holds out its fostering hand and promises indemnity." May on Insurance, §§ 1, 2.

Phillips defines it as:

"A contract whereby, for a stipulated consideration, one party undertakes to indemnify the other against certain risks." 1 Phil. Ins. § 1.

Smith, in his work on Commercial Law, defines it as:

"A contract by which a person, in consideration of a gross sum, or a periodical payment, undertakes to pay a larger sum on the happening of a particular event." Smith, Com. Laws, 299.

This collation of definitions is taken, with some rearrangement, from People v. Rose, 174 Ill. 310, 314, 51 N. E. 246, 247 (44 L. R. A. 124).

"An insurance contract," says the court, in Shakman v. Credit-System Co., 92 Wis. 366, 66 N. W. 528, 32 L. R. A. 383, 53 Am. St. Rep. 920, "is a contract whereby one party agrees to wholly or partially indemnify another for loss or damage which he may suffer from a specified peril."

Again the court, in Commonwealth v. Equitable Beneficial Ass'n, 137 Pa. 412, 419, 18 Atl. 1112, 1113, says of insurance that:

"It is a merely business adventure, in which one, for a stipulated consideration or premium per cent., engages to make up, wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to loss of property, to personal injury, or to the loss of life. To grant indemnity or security against loss for a consideration is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance."

We will refer to but one more definition of the term, which is that given by 22 Cyc. p. 1384, as follows:

"Insurance is a contract by which the one party, in consideration of a price paid to him adequate to the risk, becomes security to the other that he shall not suffer loss, prejudice, or damage by the happening of the perils specified to certain things which may be exposed to them."

The principal ingredients of such a contract are the consideration, the risk, and the indemnity. The consideration is the premium for the insurer's undertaking; the risk may be said to be the perils or contingencies against which the assured is protected; and the indemnity is the stipulated desideratum to be paid to the assured in case he has suffered loss or damage through the perils and contingencies specified. Insurance, under the statute, is a contract to indemnify "against loss, damage or liability." We

think the addition of the word "liability" to the usual definition of the term does not operate to enlarge its significance. The kinds of insurance which have grown up and are denominated insurance under the usual definition have become very numerous. 22 Cyc. 1386. And now the business of insuring against the liability of employers for the personal injuries of their employés and others is one well recognized and established. 15 Cyc. 1035.

[2] Now we may look to the contract in question, and determine whether it falls within the category of insurance, and whether a continuance of the issuance of such contracts does or does not constitute insurance business. In case the holder of the contract is sued for damages for civil malpractice, the Defense Company engages to employ a local attorney, in whose selection the holder of the contract shall have a voice, who, together with the company's attorney, will defend the case without expense to the holder, and this to the extent of the exhaustion of the sum named in the policy, which for the defense of one suit is $5,000; if others in one year, $10,000. It seems plain that when the holder is sued for civil malpractice, which he deems is wrongful, and the necessity of making defense is thrust upon him, he must suffer loss, damage, or liability within the meaning of the contract to the extent that he is obliged to employ attorneys and meet the expenses of the trial in regular course. He must pay his attorneys for their services in his behalf, and he must pay his costs on the trial. These are the contingencies which the Defense Company agrees to meet. True, the company does not agree to pay to the holder of the contract the amount of such expenses incurred up to the sum of $5,000; but it does agree to lift them from the burden or liability of the holder, so that he will not be required to use his own money to meet them. The contingency of paying the expenses of attorneys and cost of defense in case of suit for civil malpractice is the risk or peril which the company agrees that it will meet, and it can make no difference whether it pays the amount of the expenses and costs incurred to the parties doing the service or to the holder of the contract, so that he may himself meet such expenses and costs. The indemnity is the amount of such expenses and costs to be paid. Or, to put it another way, the Defense Company agrees to hold the holder of the contract harmless in that respect to the extent of $5,000 in the event of the happening of the contingency specified.

Such a contract, in our opinion, cannot be classed as a contract for personal services. The company is not itself an attorney, and does not undertake the defense as such. What it does undertake is, in case of suit, to employ a local attorney, in whose selection the holder shall have a voice, who, with the company's attorney, will defend the case, and to relieve the holder from the expense thereof, an expense which must follow the happening of the very contingency provided against. Not only this, but the company must relieve the holder of paying the costs of suit. Suppose the contract had been to repay to the holder whatever sums, not exceeding $5,000, he should be required to pay out for attorneys and costs in case of such litigation. Could there be any question that there would be a contract of insurance?

We think not. Can it change the character of the contract in this respect that it purports to hold the hoider harmless against the payment of such expenses and costs? The contract, reduced to its simplest idea, is but an agreement to pay the expenses and costs that the holder would have to pay in the contingency specified. This is indemnity pure and simple, and with whatever verbiage the contract may be clothed it does not serve to cover its real purpose, which is one to indemnify the holder against damage and liability for attorney's expenses and costs of defense, in the event he is sued for malpractice.

It is faulty logic to say that this is not a loss, damage, or liability of the contract holder, premising that he does not incur it, and concluding that it is the liability of the Defense Company. The loss, damage, or liability follows the suit for malpractice; and, were it not for the contract of the Defense Company, the holder must bear it. Whose loss, damage, or liability would it then be? That of the person sued, of course. It is this very burden which the Defense Company agrees to bear in case the contingency of the holder being sued happens, and this is insuring the holder against the risk dependent upon the contingency. Looking on the other side, if this be a contract for personal services, why limit the amount of the services to be rendered in dollars and cents? Attorneys do not take contracts for defending parties sued in that way. How peculiar it would be for an attorney to say: "I will engage in your defense $5,000 worth." It would follow that when the fund was exhausted the attorney would quit, whether the case was brought to a close or not. The very uncertainty of the amount to be paid by the Defense Company to meet the exigency contracted against is persuasive that the contract is not one of hiring, but one rather of indemnity. And such is our conclusion. See Physicians' Defense Co. v. O'Brien, 100 Minn. 490, 111 N. W. 396. The reasoning of the court in this case is both cogent and persuasive.

The plaintiff cites with confidence Vredenburgh v. Physicians' Defense Co., 126 Ill. App. 509, and State v. Laylin, 73 Ohio St. 90, 76 N. E. 567. While these cases are squarely opposed to our position, we are unable to adopt their reasoning.

It follows that the decree of the court below should be affirmed; and it is so ordered.