## Allin, Insurance Commissioner, v. Motorists' Alliance of America, Incorporated.

(Decided June 10, 1930.)

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellant.

EDWARD C. O'REAR and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellee, Motorists' Alliance of America, Incorporated, filed its petition in the Franklin circuit court alleging that it was a corporation organized and existing by virtue of the laws of the state of Ohio with power to contract and to be contracted with, to sue and be sued and generally to furnish accident and other services to automobile owners; that it had a place of business in Frankfort, Ky., and an authorized agent thereat upon whom process may be served and that it had filed in the office of the secretary of state of Kentucky a statement signed by its president and secretary giving the location of said place of business and the name of its agent; that it was thereby authorized by the secretary of state to transact business in the state of Kentucky; that Arch H. Pulliam was the duly appointed and acting deputy insurance commissioner during the existence of a vacancy in the office of insurance commissioner of the state of Kentucky; that the business it proposed to carry on consisted of soliciting owners of automobiles to enter into contracts with it, whereby, in consideration of an annual payment of money to be agreed upon, it promised and agreed to perform services as follows:

"LEGAL SERVICE

"(a)   Manslaughter.

"The attorneys for Motorists' Alliance of America Incorporated, if requested by said contract holder, will defend (without charge to him for attorney fees) in all legal proceedings against him, arising out of alleged wrongful death of another, growing out of the operation of his said automobile by himself, a member of his family, his agent or employee.

"(b)   Reckless Driving.

"The attorneys for Motorists' Alliance of America Incorporated, if requested by said contract holder, will defend him (without charge to him

for attorney fees) in all legal proceedings for damages against him for reckless driving, growing out of the alleged collision of said automobile with other vehicles, by or through its authorized lawful use by himself, a member of his family, his agent or employee.

"(c)   Damage Suits and Criminal.

"The attorneys for Motorists' Alliance of America Incorporated, if requested by said contract holder, will defend him (without charge to him for attorney fees) in all legal proceedings, both criminal and civil, growing out of the lawful use of his said automobile by himself, a member of his family, his agent or employee.

"(d)   Collisions.

"The attorneys for Motorists' Alliance of America Incorporated, if requested by said contract holder, will represent him (without charge to him for attorney fees) in the prosecution of all lawful claims for damages he may have to his automobile, by or through its authorized use, by himself, a member of his family, his agent or employee.

"(e)   Personal Injury.

"The attorneys for Motorists' Alliance of America Incorporated, if requested by said contract holder, will prosecute (without charge to him for attorney fees) any claim for damages for personal injuries to himself, growing out of collision with other vehicles.

"(f)   General Defense.

"The attorneys for Motorists' Alliance of America Incorporated will represent said contract holder (without charge to him for attorney fees) in any court proceedings growing out of the lawful use of the said automobile, whether used by himself, a member of his family, his agent or employee."

It was alleged that there were other provisions in the contract to the effect that the contract holder must immediately notify appellee by wire, or in writing, of any claim asserted against him; that he must furnish appellee with a written statement of the facts relating to such claims and forward any summons or other legal process to appellee as soon as served on him; that appel-

lee would arrange for certain merchandise savings in purchases made at gasoline stations and stores; that it would pay a reward of $100 to the person causing the arrest and conviction of any person stealing the automobile belonging to the contract holder; that it would pay certain towing charges for the towing of any disabled car within a certain radius; that it would furnish touring information free to the contract holders.

It was alleged that the contract contained a provision as follows: "This contract is not one of indemnity or insurance and this Alliance is not responsible for any court costs or damages recovered against the owner or expenses incurred in connection with the litigation, except the services of the Alliance's attorney."

It was alleged that there was an actual controversy existing between appellee and appellant as to the construction to be given the businesses enumerated and the statutes of Kentucky relating to the licensing of insurance companies to do business in Kentucky; that appellant was contending that the business proposed to be carried on was an insurance business as defined by the laws of Kentucky and that appellee must comply with the statutes of Kentucky relative to the transaction of insurance business by a foreign corporation and that it must be licensed as such by him before it could lawfully transact such business in Kentucky, while it was contended by appellee that the business which it desired to carry on was not an insurance business and did not fall within the statutes regulating the transaction of insurance business in the state of Kentucky; that, in consideration of an annual amount of money to be agreed upon between it and persons with whom it might contract, it proposed no more than to furnish them services through its attorneys as set out in the contract, and that it did not propose to indemnify the contractees against any court costs or damages recovered against them, or any other expenses; that it proposed to effect savings for its contractees on gasoline purchases and supplies, as set out above, by arrangements with gasoline and automobile supply dealers, and also to furnish the towing and various other services enumerated above.

It was alleged that appellant was threatening to institute prosecutions against it and its agents under the laws of Kentucky providing that it shall be a criminal offense to make a contract of insurance without a compliance with the laws of the state.

The petition then attempts to point out that a certain association has been conducting a similar business in Kentucky for some years, and closes with the allegation that it is proposing to solicit persons in Kentucky to purchase the contracts wherein it binds itself to perform the things above mentioned.

A general demurrer was filed to the petition and each paragraph thereof which was overruled, but a motion to strike from the petition the allegations relating to the alleged similar work carried on by another association was stricken. It was agreed by the parties that since the institution of the action Bush W. Allin had been appointed and had qualified as insurance commissioner of Kentucky, and his name was substituted in lieu of the name of the deputy insurance commissioner as defendant in the action.

There was an answer filed, but it does no more than to allege the nature of the business carried on by appellee, and pleads that such business is insurance within the meaning of the statutes of Kentucky.

Upon final submission the chancellor adjudged that the contract was a contract to render services and not one of insurance, and for that reason the appellee was not required by the statutes of Kentucky to comply with the laws of this state governing the transaction of the business of insurance, and directed that the insurance commissioner be enjoined and prohibited from interfering, or attempting to regulate the business of plaintiff.

The sole question involved is whether the matters and things enumerated in the contract, which appellee proposes to do, constitute the business of insurance as defined by the laws of the state. The question is an important one. It is contended by the learned assistant Attorney General that a careful review of the holdings of the courts of the several jurisdictions of the United States is convincing that the character of business proposed is insurance within the meaning of the laws of the state of Kentucky. He cites and relies on the case of Physicians' Defense Co. v. O'Brien, 100 Minn. 490, 111 N. W. 396. The opinion in that case was by the Supreme Court of Minnesota. It was there held that, "a contract by which a corporation, in consideration of a stipulated amount, agrees to defend a physician against all suits for damages for malpractice at its own expense, not exceeding a fixed amount, but not to pay any judgment obtained against the physician, is a contract of insurance, and the

corporation making such contract is engaged in the business of insurance.''

It was there said:

"The essential purpose of such a contract is not to render personal services, but to indemnify against loss and damage resulting from the defense of actions for malpractice.''

The contract involved in that case was of the same nature as the contract in controversy in the case before us. There the corporation agreed, by the terms of its contract with the contractee, to furnish an attorney to represent the physician in the defense of any suit that might be instituted against him for malpractice.

In the case of Physicians' Defense Co. v. Cooper, Insurance Commissioner (C. C.) 188 F. 832; Id. (C. C. A.) 199 F. 576, 580, 47 L. R. A. (N. S.) 290, the same contract was in controversy as in the case cited from the Supreme Court of Minnesota. The United States District Court, with some elaboration, reviewed the question and held that the contract was one of insurance. Upon an appeal to the Circuit Court of Appeals for the district embracing the state of North Carolina, that court affirmed the judgment of the District Court in a well-reasoned opinion. The court said: "Such a contract, in our opinion, cannot be classed as a contract for personal services. The company is not itself an attorney, and does not undertake the defense as such. What it does undertake is, in case of suit, to employ a local attorney, in whose selection the holder shall have a voice, who, with the company's attorney, will defend the case, and to relieve the holder from the expense thereof, an expense which must follow the happenings of the very contingency provided against.''

There may be some distinction that might be pointed out between the physicians' defense contract and the contract sold by appellee, but they appear to be substantially the same.

Counsel for appellee call our attention to the case of Vredenbrough v. Physicians' Defense Co., 126 Ill. App. 509, where it was held that the contract which appears to have been the same contract mentioned in the two cases last above referred to was not one of insurance, and the reasoning in that opinion cannot be dismissed as without merit.

Our attention is also called to the case of State ex rel. Physicians' Defense Co. v. Laylin, Secretary of State, 73 Ohio St. 90, 76 N. E. 567. The Supreme Court of Ohio held that the contract was not one of insurance. It was pointed out that Ohio had no general statutory definition of insurance, but that court had been called upon to define the meaning of insurance in a number of opinions which were cited by the court. The same conclusion was reached as in the Illinois case, but the court seems to have held that the contract was invalid, as against public policy, under a provision of the Ohio statutes on the ground that it was a processional business, and that it might not be transacted or carried on by a corporation in the state of Ohio because of the statutory provision.

We are not called upon to align this court in either side of the question as we might be required to do if there were no statutory provision touching the matter in this state. Section 687, Ky. Stats., as amended by chapter 14 of the Acts of the General Assembly, 1922, is controlling. That section deals with risks, the character that may be taken, deposit with the state treasurer, reports, limit of risk, and liability of officers for exceeding limit. It is dealing with that division of our insurance laws relating to insurance other than life. The section is also divided into two general divisions. One dealing with fire, lightning, storm, and transportation insurance, while the other division deals with other kinds of insurance not embraced in that division regulating life insurance nor the kinds of insurance first mentioned. Eliminating all the provisions of that section not applicable to the paricular matter under consideration, it reads as follows:

"It shall be lawful for any company organized under this law: . . .

"To make any of the following kinds of insurance: . . .

"(9) upon automobiles and all other cars and vehicles, including public liability, property damage, collision, fire and burglary and theft insurance, and to insure the owners of such automobiles and all other cars and vehicles against such losses as arise out of the owership, operation or maintenance of the same"

It is not good logic to argue that the furnishing of an attorney to represent the owner of an automobile in

his defense in court actions is not a loss indemnified against. Insurance companies are authorized to indemnify against such losses as arise out of the ownership, operation, or maintenance of an automobile. If, in the operation of his automobile, he has a loss resulting in a claim against him, the collection of which is prosecuted in a court, he must have an attorney and pay for his services, and it would be futile to argue that the contract in question does not indemnify him against a loss. If it provided for the payment of an attorney fee not to exceed a certain sum when the owner of the automobile should be haled into court by reason of something growing out of his ownership or operation of his automobile, we believe that no one would argue that it was not insurance. The difference is one of form and not of substance. The contract provides against any loss growing out of the payment of attorney fees by the simple expedient of agreeing to furnish and pay the attorney. The above quotation from the statute was inserted by chapter 14 of the Acts of 122. Its purpose was to authorize the owner of an automobile to insure against such losses as arise out of the ownership, operation, or maintenace of the same. The contract holder is required to do nothing other than to notify appellee that he needs an attorney, and, upon such notification, he is relieved of all expenses incident to the employment of an attorney to represent him in his defense. It is true that the contract does not provide for the payment of any sum directly to the contractee, but it does provide for the relieving of the contractee of the expenses of the employment of an attorney. The attorney is but the agent representing the contractee in the case in court, and payment to him directly cannot well be distinguished from the act of paying the contractee directly and his paying the attorney who may represent him.

It is unnecessary for us to determine whether the other things that appellee agrees to perform fall within the laws governing insurance in this state. If so, the whole of them come under the clause of section 687 quoted above, and they are all one kind of insurance. It is, therefore, unnecessary for us to comment on the case of Com. v. Provident Bicycle Association, 178 Pa. 636, 36 A. 197, 36 L. R. A. 589. That case, however, relates to a co-operative arrangement among bicycle owners which is quite a different thing from the contract which we have under consideration.

It is suggested by counsel for appellee that other associations, or clubs, have been rendering the same character of service as is proposed by the terms of the contract submitted by appellee, and that contemporaneous construction favors the contention of appellee. There is nothing to indicate that there has been any construction placed upon the statute under consideration since its passage in 1922. There is made a part of the record a number of exhibits relating to the service rendered by automobile clubs, but we do not understand exactly the purpose of making them a part of the record. It is shown by some of these exhibits that certain clubs provide an emergency service; a legal department which is responsible for the care of all legislative and legal matters pertaining to the club especially in the elimination of speed traps and roadside courts, where club members are being prosecuted; the breaking up of ''fake'' insurance and emergency service companies and the prosecution of organized automobile thieves; brake testing; clubhouse; touring information; and probably other specific service which is in the nature of a co-operative service among the members of the clubs. We are not called upon to determine whether the services so rendered by any clubs, or associations, fall under the insurance laws, but counsel for appellee are mistaken in their contention that the services enumerated are the same as the services proposed by appellee. In one of the exhibits filed the automobile club, in its contract relating to towing, has this provision:

> ''The company will furnish towing to contract holder within the limits of ——, or any other city where the company maintains a service office. It will also arrange for towing from points outside of such city limits at Twenty-five per cent (25%) less than the established rate for such towing.'

That appears to be a contract for service to be actually rendered by the company itself for a contract holder, and there is no agreement that towing will be provided at all except within the limits of the city where the company maintains a service office. But there is a provision that outside of such a city the company will arrange for towing at a cost one-fourth less than the established rate for such towing.

In the contract submitted by appellee, we find this provision:

> "If the contract holder's car becomes totally disabled while on a pleasure or business trip, Motorists' Alliance of America Incorporated will pay towing charges, up to $1.00 per mile, on said disabled car, to his home or to a garage within a radius of ten miles from the place of disablement.'

Here there is no undertaking by the company to do the towing itself, nor is there any undertaking that it will arrange to have the towing done at a less rate than the usual price of towing. It is a straight out agreement to pay some one else for the towing, and thereby relieve the owner of the automobile from the payment. We call attention to this only for the purpose of showing that appellee is not proposing to render the services ordinarily rendered by the standard automobile clubs, but we are not now deciding whether that provision of the contract relating to towing is insurance.

It is suggested in brief for appellee that the contract shows, on its face, and so states, that it is not an insurance policy. But that is wholly beside the question. No one can change the nature of insurance business by declaring in the contract that it is not insurance. As was said in the case of State v. Beardsley, 88 Minn. 20, 92 N. W. 472, 474:

> "The real character of this promise, or of the act to be performed, cannot be concealed or changed by the use or absence of words in the contract itself; and it is wholly immaterial that on its face this contract does not expressly purport to be one of insurance, and that this word nowhere appears in it. Its nature is to be determined by an examination of its contents, and not by the terms used."

It is argued by the assistant Attorney General, in his supplemental brief, that the contract should be declared void because, under the provisions of section 98-6, Ky. Stats., no person is allowed to practice law in this state without being licensed and sworn as therein provided, and that this contract provides for the practice of law in this state by the corporation without compliance with that law. But we find it unnecessary to determine that question.

No question is determined other than that the provision of the contract to provide for services of an attorney, free of charge upon the happening of certain contingencies, is insurance within the meaning of section 687, Ky. Stats.

Judgment reversed and cause remanded, for proceedings consistent with this opinion. Whole court sitting.

Judges CLAY and WILLIS dissenting.