■ STATE OF NEW YORK, Appellant, v BLUE CREST PLANS, INC., Respondent.—Judgment, Supreme Court, New York County, entered March 15, 1979, which denied plaintiff's request for a permanent injunction and dismissed the complaint, unanimously reversed, on the law, with costs and disbursements, and the plaintiff is granted a permanent injunction enjoining the defendant from engaging in the business of insurance without a license from the Department of Insurance of the State of New York. Subdivision 1 of section 41 of the Insurance Law provides: "The term 'insurance contract' * * * shall * * * be deemed to include any agreement or other transaction whereby one party, herein called the insurer, is obligated to confer benefit of pecuniary value upon another party, herein called the insured or the beneficiary, dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such

happening, a material interest which will be adversely affected by the happening of such event. A fortuitous event is any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party." Many of the legal services covered by the Blue Crest Major Legal Benefit Plan sponsored by defendant will arise only upon occurrences that are to a substantial extent beyond the control of either the subscriber or the sponsor. Defendant's brochure acknowledges this reality in stating "Unforeseen legal crises arise." Defendant's agreement with each subscriber (not the agreement with the union in which those subscribers are members) presents indicia of an insurance contract within the ambit of section 41 of the Insurance Law. To a large extent defendant's plan resembles those of health maintenance organizations. Both involve prepayment for services to provide benefits in both fortuitous and nonfortuitous events. Except for the exemption of section 44-a of the Insurance Law, health maintenance organizations would be considered engaged in an insurance business. Those that may operate without a license from the Insurance Department, however, do obtain a certificate of authority from the Commissioner of Health (Public Health Law, § 4402). Organizations providing health care services in exchange for a periodic fee paid in advance, but which are not subject to the exemption of article 44 of the Public Health Law, are deemed to be engaged in an insurance business (Insurance Law, § 44-a, subd 2). Other indications that the agreement at issue constitutes insurance are: a distribution of loss among a large group; an insurable interest; a legally binding promise; a premium paid; and a profit motive on the part of the defendant. The only written agreement contained in the record—that with the ultimate consumer—does not provide for distribution of excess payments. The alleged oral agreement between defendant and the union relevant to this point, calls for an equal distribution of excess payments not based on individual usage. This would still constitute the business of insurance. The Insurance Department has clearly indicated that any usage adjustment would have to be on an individual, not group basis (see *State of New York v Abortion Information Agency,* 37 AD2d 142, 145, affd 30 NY2d 779). *Matter of Feinstein* (36 NY2d 199) with its emphasis on the absence of a profit motive, is inapposite.* Here, the defendant is clearly not a charitable or eleemosynary institution and is not engaged in a nonprofit endeavor. Finally, the record herein does not demonstrate that defendant's plan is an employee benefit plan of the type envisioned by the Employee Retirement Income Security Act (ERISA) (US Code, tit 29, § 1001 *et seq.)* The defense of Federal pre-emption is not available under these circumstances. Section 466 (subd 1, par [a]) of the Insurance Law which provides an exemption for a labor union from the requirement of obtaining a license to do an insurance business is unavailing insofar as defendant is concerned. Here, it is clear that an independent organization, not the union, is doing business. Concur—Sullivan, J. P., Bloom, Lane, Lupiano and Ross, JJ.

---

* "Most important, plans like these presented and to be operated by benevolent or charitable organizations * * * provide a natural limitation on those who might present such plans in order to mask an out-and-out insurance or indemnity scheme. This is further evidence that plans like these fall outside the spirit and purpose of the existing provisions of the Insurance Law" *(Matter of Feinstein,* 36 NY2d 199, 209.)