Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
 Kinser, JJ., and Whiting, Senior Justice

LAWYERS TITLE
INSURANCE CORPORATION
                         OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 970385                   October 31, 1997

NORWEST CORPORATION, ET AL.

                FROM THE STATE CORPORATION COMMISSION


     In this appeal of right, we focus upon the meaning of

"insurance" in the context of the regulatory jurisdiction of the

State Corporation Commission and its Bureau of Insurance.  The

term is not defined in the Code of Virginia, but we have said

that a "shifting of the risk is the essence of insurance."  Hilb,

Rogal and Hamilton Co. v. DePew, 247 Va. 240, 248, 440 S.E.2d

918, 923 (1994).

     Here, we consider whether the Commission erred in ruling

that it had no authority to regulate a product that is being

offered to consumers in the title insurance market.

Specifically, the dispositive question is whether the product,

called "Title Option Plus" (TOP), involves a shifting of the risk

of title defects, thus constituting insurance subject to

Commission regulation.

     In 1995, the Commission issued a rule to show cause against

appellees Norwest Corporation, Norwest Mortgage, Inc., and

American Land Title Company, Inc.  The Commission alleged

defendants were violating Code § 38.2-1024 by offering TOP and

thereby transacting the business of title insurance in the

Commonwealth without first obtaining a license from the

Commission.  The rule was issued after a Bureau of Insurance

investigation was undertaken in response to a complaint made by appellant Lawyers Title Insurance Corporation. Lawyers Title was permitted to participate in the proceeding as a party complainant.

Subsequently, a Commission examiner conducted a hearing and issued a report. He found against the defendants and recommended that the Commission take punitive action against them.

Later, the Commission considered the hearing examiner's report, the evidence of record, and argument of counsel. In a 1996 Final Order and Opinion, the Commission unanimously determined "that TOP is not insurance under the current state of the law in Virginia." Consequently, the Commission dismissed the rule to show cause. This appeal ensued.

Upon review of a Commission's final order, we do not consider the matter de novo. On appeal, the Commission's findings "are presumed to be just, reasonable, and correct." Swiss Re Life Co. Am. v. Gross, 253 Va. 139, 144, 479 S.E.2d 857, 860 (1997). The Commission's order is entitled to the respect due judgments of a tribunal informed by experience, and its decision will not be disturbed when "based upon the application of correct principles of law." Id.

The facts are virtually undisputed. Norwest Corporation is a bank holding company and the parent of the other two defendants. Norwest Mortgage originates first mortgage loans and sells most of them in the "secondary market" to entities such as

the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Association (Freddie Mac), and the Government National Mortgage Association (Ginnie Mae). American Land Title, operating under the trade name "ATI Title Company," is a title insurance agency licensed in Virginia and performs searches of titles to real property in this state.

In 1992, Norwest Mortgage and American Land Title began to develop TOP. TOP is a "process" by which Norwest Mortgage determines the record status of title to real property in order to decide whether to make a mortgage loan. The concept grew out of precedent in the second mortgage loan industry in which certain mortgage lenders relied on a record title search and report, not title insurance, to determine whether to make a mortgage loan. Norwest Mortgage began offering the product to Virginia borrowers in March 1994.

TOP is available only on Norwest Mortgage loans secured by first deeds of trust on existing residential property. TOP is not available on loans for new construction, commercial property, or leaseholds because "the risks are higher on that type of property," according to the testimony.

Under the process, if a borrower elects to have TOP apply, American Land Title prepares a "Title Condition Report." This Report is not a guarantee of title. It is American Land Title's representation to Norwest Mortgage that the information provided, including a list of liens and other encumbrances, is based upon a

search of the public land records.  The Report states it "does not insure or commit to insure title or the validity, priority or enforceability of the Lender's lien, and is not intended to be relied upon as a legal opinion as to the lien status."

Norwest Mortgage charges the borrower a fee for obtaining such a report.  Generally, the TOP fee is 10% less than the premium on a traditional lender's title insurance policy.  If the Report reveals no title defects in the property offered to secure the loan, and the borrower meets other requirements to qualify for a loan, Norwest Mortgage will approve the loan without requiring the borrower to purchase a lender's title insurance policy.

In Virginia, Norwest Mortgage's loan is secured by a deed of trust, which conveys legal title to the property to a trustee who holds such title in favor of Norwest Mortgage as security for the loan.  Under the terms of the deed of trust, the borrower represents to Norwest Mortgage that the borrower "is lawfully seised" of the property and has the right to convey it, that the property is unencumbered, except for encumbrances of record, and that the borrower "will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."  These deed of trust representations are made by the borrower whether or not the borrower has elected to have TOP apply to the transaction.

As we have said, Norwest Mortgage sells its first mortgage

loans, including TOP loans, on the "secondary market," primarily to Freddie Mac, Fannie Mae, and Ginnie Mae. Freddie Mac and Fannie Mae will accept TOP in lieu of lender's title insurance or an attorney's title opinion. In return, Norwest Mortgage agrees to cure any title defect in the loan secured by the deed of trust or to repurchase the loan from these secondary purchasers. Norwest Corporation further guarantees Norwest Mortgage's performance. Ginnie Mae accepts TOP on Norwest Mortgage loans, but does not require the additional guarantee from the parent corporation.

In its Final Order and Opinion, the Commission focused on the time "when the TOP transaction occurs" between the borrower and the lender, and not on the time when Norwest Mortgage sells the loan. It found that "TOP does not involve the shifting of risk that is essential to the creation of insurance." It stated that Norwest Mortgage, "like any lender, incurs a risk that the priority of its lien is not what it believed it to be when the loan was made. [Norwest Mortgage] creates and bears that risk itself by virtue of its decision to make the loan. When lender's title insurance is purchased, . . . (the lender) transfers its risk to the title insurance company. But where TOP is involved, [Norwest Mortgage] retains the title risk." We agree with the Commission's analysis.

When Norwest Mortgage makes a loan, it is a mortgage loan secured by a lien interest in the realty. At that point in time,

Norwest Mortgage incurs a title risk that the loan is not properly secured or that its lien is not first in priority. Then, Norwest Mortgage sells that mortgage loan into the secondary market. At that point, Norwest Mortgage makes a warranty and representation to the secondary market purchaser that the loan is a first mortgage loan.

From the time of making the loan to the selling of the loan, and thereafter for the life of the loan, the risk always is upon Norwest Mortgage. It bears the risk that the borrower's representations, made in the covenants of the deed of trust, are not correct. Parenthetically, if any of the borrower's covenants are false, then the lender's lien interest in the realty securing the loan may be in jeopardy, and the borrower is at risk of a claim by the lender. TOP does not remove this risk from the borrower. Finally, when the loan is sold on the secondary market, Norwest Mortgage bears the risk that its representations and warranties are not correct. Accordingly, throughout the entire transaction, there is a <u>retention</u> of the risk by Norwest Mortgage, and not a <u>shift</u> of the risk.

The Commission referred to its own administrative precedents and found them "both persuasive and consistent with" the view of this Court that a shifting of the risk is the essence of insurance. For example, the Commission noted Administrative Letter 1982-10 issued by the Bureau of Insurance drawing a distinction between risk retention and risk transfer with regard

to extended warranty service plans offered by automobile manufacturers or dealers, on the one hand, and those offered by third parties, on the other. The Bureau had opined that such contracts "are policies of mechanical breakdown insurance if offered by [an entity] other than the manufacturer or seller of the covered motor vehicle," but such contracts offered by the manufacturer or seller are "more in the nature of warranties than of insurance." The Bureau said: "The primary risk of loss under such contracts must remain with and be borne by the manufacturer or seller, or the contract will be deemed to be an insurance policy."

Finally, the Commission addressed the "warranty" issue in depth. The defendants argued to the examiner that Norwest Mortgage's contractual obligations under TOP are in the nature of warranties, not insurance. Thus, defendants argued, because the Commission does not regulate warranties, a license to provide TOP in Virginia is not required.

Agreeing with defendants, the Commission rejected the hearing examiner's analysis, embraced on appeal by Lawyers Title, based on the nature of warranties for manufactured products. The hearing examiner said that if a so-called warranty "protects the purchaser from losses caused by perils unrelated to the manufacture of the product and outside the seller's control, the promise to indemnify is more in the nature of insurance" and is not a warranty. The examiner noted that Norwest Mortgage

"assumes the risk of both on- and off-record title defects by guaranteeing [a Norwest] mortgage has first lien status." However, according to the examiner, "any losses resulting from a title defect, particularly off-record defects, are unrelated to any defect or failure in the loan, . . . the so-called `product,' sold by [Norwest Mortgage].  Rather, the title defects relate to the collateral securing the loan" and not "the loan itself."  The examiner decided that because these off-record defects, such as recording errors and forgeries, could not be under the defendants' control, TOP cannot be a warranty and must instead be insurance.  We agree with the Commission that this analysis is flawed.

In the context of this discussion, a warranty relates to the character or efficiency of the product sold, and would not cover a hazard wholly unrelated to the quality of the product.  See Ollendorff Watch Co. v. Pink, 17 N.E.2d 676, 677 (N.Y. 1938).  As the defendants argue, the representation and warranty by Norwest Mortgage that its loan is secured by a first lien is a representation relating to the character and quality of the loan, the "product."  The status of the lien securing the loan is being warranted.  This lien status is as integral to the character and quality of the loan as the rate of interest and duration of the loan.  For example, a loan secured by a second or third lien lacks the character and quality of a loan secured by a first lien.

And, the fact that Norwest Mortgage's warranties require indemnification for off-record title defects that are beyond its control does not mean they are not true warranties. Any after-discovered defect affecting the status or priority of the lien necessarily affects the character and quality of the loan, whether the defect results from a negligent title search by American Land Title or from an off-record problem not discoverable by a diligent title examiner. The fact that Norwest Mortgage has no "control" over these off-record defects does not mean that Norwest Mortgage has warranted a condition unrelated to the quality of the loan product sold on the secondary market. A deficient lien is a defect in the product sold by Norwest Mortgage, whatever its cause, and its contractual undertaking with regard to such a defect is a warranty, and not insurance.

In sum, we agree with the Commission's rejection of the notion "that if a product looks like insurance, and is sold like insurance, it must be insurance." Hence, we hold that Lawyers Title has failed to overcome the presumption of correctness of the Commission's final order, and it will be

<u>Affirmed</u>.

SENIOR JUSTICE WHITING, with whom JUSTICE HASSELL and JUSTICE KINSER join, dissenting.

I respectfully dissent for the following reasons.

In concluding that the TOP program is not insurance because the respective risks of defective title remain with the borrower under the deed of trust and with Norwest Mortgage as the lender,

the majority merely looks at the facade of Norwest Mortgage's TOP program without considering its substance.  Except for a statement of how the charge for the TOP contract is computed as to each borrower and a description of the "Title Condition Report" (noting the disavowal of an intent to insure the title or to express a legal opinion of the status of the title), the majority makes no further mention of the terms of Norwest Mortgage's so-called TOP "process."[1]

Apparently, there are no written contracts between TOP-purchasing borrowers and Norwest Mortgage which describe what the buyer receives in return for payment of the TOP fee.  According to the majority, it is simply a "Title Condition Report" which American Land Title furnishes its parent corporation Norwest Mortgage for which "Norwest Mortgage charges the borrower a fee . . . . [g]enerally . . . 10% less than the premium on a traditional lender's title insurance policy."[2]

[1]The majority states that "[i]n return [for Freddie Mac's and Fannie Mae's acceptance of TOP], Norwest Mortgage agrees to cure any title defect in the loan secured by the deed of trust or to repurchase the loan from these secondary purchasers." However, Michael J. Keller, one of the self-styled "co-authors" of TOP, testified that his employer Norwest Mortgage makes that agreement on all loans it sells to secondary purchasers.

[2]Norwest Mortgage's TOP fee, which the majority indicates is simply for obtaining the title condition report, is several times as large as the amount Norwest Mortgage pays its subsidiary American Land Title for this report.  This made me wonder whether something else is furnished the TOP purchaser by Norwest Mortgage in return for payment of this larger fee.  As I later discovered, a substantial part of the TOP contract is Norwest Mortgage's acceptance of a transfer of a part of the borrower's risk of bad title.

I do not think that the contractual relations between the TOP borrowers and Norwest Mortgage can be so confined. In my opinion, the oral representations by Norwest Mortgage's employees to induce borrowers to purchase TOP contracts are sufficient to provide the terms of the oral contract Norwest Mortgage makes with its borrowers in return for their payment of the TOP charges.

Since these oral contracts are collateral contracts to the borrowers' deeds of trust, they may be considered in examining the scope of Norwest Mortgage's liability. Price v. Taylor, 251 Va. 82, 86-87; 466 S.E.2d 87, 89 (1996); High Knob, Inc. v. Allen, 205 Va. 503, 506-07; 138 S.E.2d 49, 52 (1964). Further, if the inducements are sufficient to indicate Norwest Mortgage has orally agreed to the shifting of some of the risks assumed by the borrowers in their execution of the deeds of trust, I think those oral agreements are contracts of insurance under the facts in this record. See Yates v. Whitten Valley Rental Corp., 226 Va. 436, 438-39, 309 S.E.2d 330, 331-32 (1983); Dickerson v. Conklin, 218 Va. 59, 65, 235 S.E.2d 450, 454 (1977); Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 536, 211 S.E.2d 88, 89 (1975).

The record demonstrates that borrowers who participate in the TOP program buy more than a "Title Condition Report" in exchange for the TOP fee. Indeed, to induce the execution of a contract collateral to the loan, Norwest Mortgage's informational

instructions to its employees promoting the TOP program provide

in part that:

> Title Option Plus (TOP) is not lender's title insurance; rather it is <u>title coverage</u> that costs borrowers at least 10% less than standard lender's title insurance, [and] <u>provides the same (or better) protection against loss.</u>

(emphasis added).


In Norwest Mortgage's "easy script suggestions for responding to borrower or Realtor questions about TOP" appear the following pertinent questions and answers:

> 17.  Is there a higher risk to Norwest by issuing this protection versus title insurance?
>
> Yes, however, ATI [Norwest Mortgage's subsidiary company doing the title search] has a good track record compared to the industry in managing the risk of agent error, negligence, and errors incurred in closing the loan.  We can manage these risks more effectively than an independent agency structure through Quality Assurance Program and established accounting controls that most independent agencies lack.
>
> . . . .
>
> 21.  How much risk is there in other situations where a title insurance underwriter would have borne the risk, such as claims resulting from liens that are not detectable on the record?
>
> Norwest will establish an allowance for losses to cover these and other "agent error" losses.  We estimate that these losses will be less than .25%.
>
> . . . .
>
> 23.  What protection does TOP afford the borrower?
>
> TOP affords protection to the lender only:
>
> . . . .
>
> When a purchase money borrower chooses TOP the protection is provided to the Lender.  TOP indirectly

- 12 -

> protects the borrower to the extent that: a) ATI
> [Norwest's title subsidiary] will not issue TOP unless
> the title is clean, and b) <u>If a title defect shows up
> after closing, ATI will usually have to cure on behalf
> of the Lender which would cure for the Buyer as well.</u>

(emphasis added).

Although these and other statements made to TOP purchasers expressly disavow an intention to provide any kind of insurance protection to the borrower, I do not think Norwest Mortgage can conceal the essential nature of its contract by such disclaimers. Rather, I suggest that whether a particular contract is one of insurance does not depend on what it is called, but what it does. Associated Hosp. Serv. v. Mahoney, 213 A.2d 712, 721 (Me. 1965); People v. Roschli, 9 N.E.2d 763, 764 (N.Y. 1937); cf. Parker v. Inge, 157 Va. 592, 599, 161 S.E. 884, 886 (1932) (principal-agent relationship determined by substance rather than form of contract).

Here, as the majority notes, the borrower covenants in the deed of trust to "defend generally the title." However, as the above inducement literature demonstrates, that obligation is shifted from TOP borrowers to Norwest Mortgage in the TOP program in which Norwest Mortgage obligates itself to defend against any claim adverse to the borrower's title.

In my opinion, this shift of obligation is a shift of the risk of having to defend a claim adverse to the borrower's title. In support, I note that a contract to provide legal services in the event of a contingency in return for an up-front fee is one

of insurance.  See Allin v. Motorist's Alliance, 29 S.W.2d 19, 22 (Ky. 1930); Continental Auto Club, Inc. v. Commissioner of Ins., 60 N.W.2d 180, 181-82 (Mich. 1953); State v. Blue Crest Plans, Inc., 421 N.Y.S.2d 579, 580-81 (N.Y. App. Div. 1979); Texas Ass'n of Qualified Drivers, Inc. v. State, 361 S.W.2d 580, 582 (Tex. Civ. App. 1962); Wayne F. Foster, Annotation, *Prepaid Legal Services Plans*, 93 A.L.R.3d 199, 199 n.2 (1979); see also Physicians' Defense Co. v. Cooper, 199 F. 576, 580-81 (9th Cir. 1912) (applying California statutory definition of "insurance"); Arkansas Motor Club v. Arkansas Employment Sec. Div., 373 S.W.2d 404, 407 (Ark. 1963) (Arkansas statutory definition); Physicians' Defense Co. v. O'Brian, 111 N.W. 396, 397-98 (Minn. 1907) (Minnesota statutory definition).  But see Vredenburgh v. Physicians Defense Co., 126 Ill. App. 509, 513 (1906); State v. Laylin, 76 N.E. 567, 569 (Ohio 1905).

Norwest Mortgage has minimized its risks in issuing TOP contracts by (1) confining them to existing residential housing, (2) spreading the risks among a large group of TOP purchasers, and (3) establishing a reserve against any such losses, apparently from the fees paid by all TOP borrowers.  These indicia of insurance cannot be obscured by Norwest Mortgage's representation that TOP is not insurance.  See Mahoney, 213 A.2d at 721; O'Brian, 111 N.W. at 397-398; Roschli, 9 N.E.2d at 764; Blue Crest Plans, Inc., 421 N.Y.S.2d at 580-81.

Even though the ultimate risk of a title defect remains with

the borrower under the deed of trust, considering the substance of Norwest Mortgage's undertaking, I conclude that its obligation to defend any title claim shifts a part of the TOP borrowers' risk to Norwest Mortgage in return for the borrowers' payment of the TOP fee.

The majority reasons that since TOP is nothing more than Norwest Mortgage's warranty to the secondary purchaser of the character and quality of the lien securing the loan (the product sold), it cannot be insurance. However, these warranties do not relate to the borrower whose rights against Norwest Mortgage are created in the TOP contract.

For these reasons, I would hold that Norwest Mortgage's TOP plan is one providing insurance protection to its borrowers and, therefore, a violation of Code § 38.2-1024. Accordingly, I would remand this case to the State Corporation Commission for further action consistent with that conclusion.