SENIOR JUSTICE WHITING,
with whom JUSTICE HASSELL and JUSTICE KINSER join, dissenting.
I respectfully dissent for the following reasons.
In concluding that the TOP program is not insurance because the respective risks of defective title remain with the borrower under the deed of trust and with Norwest Mortgage as the lender, the majority merely looks at the facade of Norwest Mortgage’s TOP program without considering its substance. Except for a statement of how the charge for the TOP contract is computed as to each borrower and a description of the “Title Condition Report” (noting the disavowal of an intent to insure the title or to express a legal opinion of the status of the title), the majority makes no further mention of the terms of Norwest Mortgage’s so-called TOP “process.”[1]
Apparently, there are no written contracts between TOP-purchasing borrowers and Norwest Mortgage which describe what the buyer receives in return for payment of the TOP fee. According to the majority, it is simply a “Title Condition Report” which American Land Title furnishes its parent corporation Norwest Mortgage for which “Norwest Mortgage charges the borrower a fee . . . . [gjenerally . . . 10% less than the premium on a traditional lender’s title insurance policy.”[2]
I do not think that the contractual relations between the TOP borrowers and Norwest Mortgage can be so confined. In my opinion, the oral representations by Norwest Mortgage’s employees to induce borrowers to purchase TOP contracts are sufficient to provide the terms *396 of the oral contract Norwest Mortgage makes with its borrowers in return for their payment of the TOP charges.
Since these oral contracts are collateral contracts to the borrowers’ deeds of trust, they may be considered in examining the scope of Norwest Mortgage’s liability. Price v. Taylor, 251 Va. 82, 86-87; 466 S.E.2d 87, 89 (1996); High Knob, Inc. v. Allen, 205 Va. 503, 506-07; 138 S.E.2d 49, 52 (1964). Further, if the inducements are sufficient to indicate Norwest Mortgage has orally agreed to the shifting of some of the risks assumed by the borrowers in their execution of the deeds of trust, I think those oral agreements are contracts of insurance under the facts in this record. See Yates v. Whitten Valley Rental Corp., 226 Va. 436, 438-39, 309 S.E.2d 330, 331-32 (1983); Dickerson v. Conklin, 218 Va. 59, 65, 235 S.E.2d 450, 454 (1977); Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 536, 211 S.E.2d 88, 89 (1975).
The record demonstrates that borrowers who participate in the TOP program buy more than a “Title Condition Report” in exchange for the TOP fee. Indeed, to induce the execution of a contract collateral to the loan, Norwest Mortgage’s informational instructions to its employees promoting the TOP program provide in part that:
Title Option Plus (TOP) is not lender’s title insurance; rather it is title coverage that costs borrowers at least 10% less than standard lender’s title insurance, [and] provides the same (or better) protection against loss.
(emphasis added).
In Norwest Mortgage’s “easy script suggestions for responding to borrower or Realtor questions about TOP” appear the following pertinent questions and answers:
17. Is there a higher risk to Norwest by issuing this protection versus title insurance?
Yes, however, ATI [Norwest Mortgage’s subsidiary company doing the title search] has a good track record compared to the industry in managing the risk of agent error, negligence, and errors incurred in closing the loan. We can manage these risks more effectively than an independent agency structure through Quality Assurance Program and established accounting controls that most independent agencies lack.
*397 21. How much risk is there in other situations where a title insurance underwriter would have borne the risk, such as claims resulting from liens that are not detectable on the record?
Norwest will establish an allowance for losses to cover these and other “agent error” losses. We estimate that these losses will be less than .25%.
23. What protection does TOP afford the borrower? TOP affords protection to the lender only:
When a purchase money borrower chooses TOP the protection is provided to the Lender. TOP indirectly protects the borrower to the extent that: a) ATI [Norwest’s title subsidiary] will not issue TOP unless the title is clean, and b) If a title defect shows up after closing, ATI will usually have to cure on behalf of the Lender which would cure for the Buyer as well.
(emphasis added).
Although these and other statements made to TOP purchasers expressly disavow an intention to provide any kind of insurance protection to the borrower, I do not think Norwest Mortgage can conceal the essential nature of its contract by such disclaimers. Rather, I suggest that whether a particular contract is one of insurance does not depend on what it is called, but what it does. Associated Hosp. Serv. v. Mahoney, 213 A.2d 712, 721 (Me. 1965); People v. Roschli, 9 N.E.2d 763, 764 (N.Y. 1937); cf. Parker v. Inge, 157 Va. 592, 599, 161 S.E. 884, 886 (1932) (principal-agent relationship determined by substance rather than form of contract).
Here, as the majority notes, the borrower covenants in the deed of trust to “defend generally the title.” However, as the above inducement literature demonstrates, that obligation is shifted from TOP borrowers to Norwest Mortgage in the TOP program in which Norwest Mortgage obligates itself to defend against any claim adverse to the borrower’s title.
*398 In my opinion, this shift of obligation is a shift of the risk of having to defend a claim adverse to the borrower’s title. In support, I note that a contract to provide legal services in the event of a contingency in return for an up-front fee is one of insurance. See Allin v. Motorist’s Alliance, 29 S.W.2d 19, 22 (Ky. 1930); Continental Auto Club, Inc. v. Commissioner of Ins., 60 N.W.2d 180, 181-82 (Mich. 1953); State v. Blue Crest Plans, Inc., 421 N.Y.S.2d 579, 580-81 (N.Y. App. Div. 1979); Texas Ass’n of Qualified Drivers, Inc. v. State, 361 S.W.2d 580, 582 (Tex. Civ. App. 1962); Wayne F. Foster, Annotation, Prepaid Legal Services Plans, 93 A.L.R.3d 199, 199 n.2 (1979); see also Physicians’ Defense Co. v. Cooper, 199 F. 576, 580-81 (9th Cir. 1912) (applying California statutory definition of “insurance”); Arkansas Motor Club v. Arkansas Employment Sec. Div., 373 S.W.2d 404, 407 (Ark. 1963) (Arkansas statutory definition); Physicians’ Defense Co. v. O’Brian, 111 N.W. 396, 397-98 (Minn. 1907) (Minnesota statutory definition). But see Vredenburgh v. Physicians Defense Co., 126 Ill. App. 509, 513 (1906); State v. Laylin, 76 N.E. 567, 569 (Ohio 1905).
Norwest Mortgage has minimized its risks in issuing TOP contracts by (1) confining them to existing residential housing, (2) spreading the risks among a large group of TOP purchasers, and (3) establishing a reserve against any such losses, apparently from the fees paid by all TOP borrowers. These indicia of insurance cannot be obscured by Norwest Mortgage’s representation that TOP is not insurance. See Mahoney, 213 A.2d at 721; O’Brian, 111 N.W. at 397-398; Roschli, 9 N.E.2d at 764; Blue Crest Plans, Inc., 421 N.Y.S.2d at 580-81.
Even though the ultimate risk of a title defect remains with the borrower under the deed of trust, considering the substance of Norwest Mortgage’s undertaking, I conclude that its obligation to defend any title claim shifts a part of the TOP borrowers’ risk to Norwest Mortgage in return for the borrowers’ payment of the TOP fee.
The majority reasons that since TOP is nothing more than Norwest Mortgage’s warranty to the secondary purchaser of the character and quality of the lien securing the loan (the product sold), it cannot be insurance. However, these warranties do not relate to the borrower whose rights against Norwest Mortgage are created in the TOP contract.
For these reasons, I would hold that Norwest Mortgage’s TOP plan is one providing insurance protection to its borrowers and, *399 therefore, a violation of Code § 38.2-1024. Accordingly, I would remand this case to the State Corporation Commission for further action consistent with that conclusion.

 The majority states that “[i]n return [for Freddie Mac’s and Fannie Mae’s acceptance of TOP], Norwest Mortgage agrees to cure any title defect in the loan secured by the deed of trust or to repurchase the loan from these secondary purchasers.” However, Michael L Keller, one of the self-styled “co-authors” of TOP, testified that his employer Norwest Mortgage makes that agreement on all loans it sells to secondary purchasers.

 Norwest Mortgage’s TOP fee, which the majority indicates is simply for obtaining the title condition report, is several times as large as the amount Norwest Mortgage pays its subsidiary American Land Title for this report. This made me wonder whether something else is furnished the TOP purchaser by Norwest Mortgage in return for payment of this larger fee. As I later discovered, a substantial part of the TOP contract is Norwest Mortgage’s acceptance of a transfer of a part of the borrower’s risk of bad title.